438 S.E.2d 788

**Mary Nelle WOOD, Plaintiff Below, Appellant,**

v.

**Craig Herbert WOOD, Jr., Defendant Below, Appellee.**

**No. 21764.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Dec. 10, 1993.

W. Dean DeLaMater, DeLaMater, Hagg & Bohach, Weirton, for appellant.

Frank Cuomo, Jr., Cuomo Law Offices, Wellsburg, for appellee.

WORKMAN, Chief Justice.

This case is before the Court upon an appeal of Mary Nelle Wood from the December 30, 1992, and December 31, 1992, orders of the Circuit Court of Brooke County in which the lower court granted the Appellant child and spousal support, but refused to consider an award of attorney fees. The Appellant contends that the lower court committed the following errors: 1) failed to award child support in accordance with the child support guidelines set forth in 6 West Virginia Code of State Regulations §§ 78–16–1 to –20 (1988); 2) improperly determined the effective date of the child support awarded; 3) improperly determined the amount and the effective date of rehabilitative spousal support; 4) improperly limited the rehabilitative spousal support to a two-year period and failed to award permanent alimony; and 5) refused to award attorney fees and expenses relative to child support and spousal support because of a bankruptcy proceeding initiated by the Appellee on May 30, 1991. The Appellee makes the following cross-assignments of error: 1) the circuit court erred in failing to attribute income to the Appellant before calculating the child support formula pursuant to 6 West Virginia Code of State Regulations § 78–16–4; 2) the circuit court improperly considered the income of the Appellee's second wife in determining the amount of child support; and 3) the circuit court erred in extending the Appellant's rehabilitative alimony for an additional two years. Having considered the parties' briefs, arguments and all other matters of record submitted before this Court, we conclude that the trial court erred in resolving some of these issues and accordingly we reverse and remand.

This appeal arises out of a divorce action which was originally appealed and remanded by this Court in 1991, for reconsideration of the child support award because the child support guidelines had not been utilized in determining the appropriate child support award. *See Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991). At that time, this Court upheld the award of attorney fees in favor of the Appellant and stated that upon remand, the circuit court should award the Appellant "the reasonable attorney's fees and costs necessitated by her appeal." *Id.* at 756, 403 S.E.2d at 773.

On May 30, 1991, subsequent to this Court's remand, the Appellee filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania. The bankruptcy court issued an automatic stay of all further proceedings in the circuit court, until September 25, 1991, when the bankruptcy court ordered that the automatic stay be lifted with regard to child support [1], stating that a support obligation is nondischargeable in bankruptcy.

On October 16, 1991, the Appellant filed a motion with the circuit court seeking a determination of the appropriate amounts of child support, as well as an award of attorney's fees and expenses pursuant to this Court's directive. The trial court, through application of the child support guidelines, ordered on March 3, 1992, that the child support award should be increased from the original award of $720 to $997.75 per month beginning on November 7, 1991, the date the hearing was conducted. The Appellant filed a motion seeking reconsideration of the child support award as well as attorney's fees and expenses incurred relating to the remand.

---

1. The Appellant also states in her brief that the bankruptcy court ruled that a similar order would be entered pertaining to alimony; however, a copy of that order is not in the record before this Court.

On September 1, 1992, the Appellant also filed a petition for modification of alimony seeking a continuation of spousal support[2] as well as attorney's fees and costs.

By orders dated December 23, 1992, and December 30, 1992, the trial court found that the Appellant needed approximately $2500 to complete training in education and counseling. The lower court determined additionally that the Appellant did not get $18,000 of an equitable distribution award due to the Appellee filing for bankruptcy. The lower court concluded that a substantial change of circumstances existed since the Appellant did not receive the equitable distribution award. The court ordered an extension of the Appellant's rehabilitative alimony for two years beginning on January 1, 1993, in the amount of $300 per month. At the end of the two-year period, the alimony was to terminate permanently. The court also ordered the child support award be increased to $1,136 per month based upon the child support guidelines. The effective date of the child support award was November 7, 1991. The lower court refused to award attorney fees and costs due to the Appellee's bankruptcy proceeding.[3]

## I.

### A. CHILD SUPPORT AWARD

The first issue concerns the amount of child support awarded by the circuit court. The amount of child support awarded was affected by certain deductions from the Appellee's monthly gross income permitted by the lower court. Specifically, in a December 31, 1992, supplemental order the trial court permitted the Appellee to take a $444 deduction by the Appellee's credit union and refused to require the Appellee to take the maximum number of withholding exemptions, the effect of which decreased the Appellee's monthly pay, but insured a larger income tax refund for the Appellee. Because of these two deductions, the trial court declined to deduct the Appellee's alimony payments.

The Appellant argues that the circuit court's approval of these deductions from the Appellee's gross income are contrary to the child support guidelines. In particular, the Appellant contends that the Appellee was allowed to deduct federal income tax withholding from his gross income on an admitted zero exemption basis, rather than on the maximum number of withholding exemptions to which the Appellee is legally entitled and actually claims on his income tax returns. The Appellant also asserts that the lower court allowed the Appellee to deduct voluntary insurance premiums and credit union payments for his second wife's car loan from his gross income. Finally, the Appellant alleges that under 78 West Virginia Code of State Regulations § 16–17.1.3, the self-support deduction for the Appellee should have been $365 instead of $450. Conversely, the Appellee maintains that the lower court failed to consider the Appellant's earning potential and attribute income to her before calculating the appropriate child support. Moreover, the Appellee argues that the trial court improperly considered his second wife's income in determining the amount of child support. Finally, the Appellee also states that the trial court failed to include all five of his children, including the two children from his current marriage, at the time child support was calculated and that the Appellee's actual net income after payment of alimony should have been used in the child support calculation.

In syllabus point 3 of *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990) this Court held, in pertinent part: the amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va.Code*, 48A–2–8(a) [1989], unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlines in *W.Va.Code*, 48A–2–

2. The spousal support was scheduled to terminate with the payment covering the period from August 15 to September 15, 1992.

3. The circuit court reviewed and affirmed these findings of fact and conclusions of law as reflected by an April 22, 1993, order and a May 4, 1993, order.

8(a)(1) [1989], or contrary to the best interests of the children or the parties.

*Accord,* Syllabus, *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989). West Virginia Code § 48A–2–8(a) (1992 & Supp.1993) creates a rebuttable presumption that the amount of child support awarded pursuant to the guidelines is the correct amount to be awarded.

◼ The child support guidelines provide that "the amount of income tax deducted and withheld by a[n] employer from income of a support obligor ... shall be based upon the maximum number of withholding exemptions allowable under the applicable tax law." 6 W.Va.C.S.R. § 78–16–7.1. A review of the record, including Appellee's testimony and the Melson Formula worksheets utilized by the trial court in calculating the child support award, indicates that the Appellee admittedly claims zero exemptions for the purposes of federal income tax withholding and then claims seven exemptions on his federal income tax return. For withholding purposes, the significance of claiming zero exemptions as compared to claiming seven exemptions is that when zero exemptions are claimed, the amount of federal income taxes withheld from each pay check is increased, which in turn decreases the amount of net income available for calculating a child support award. Consequently, the reason that 6 West Virginia Code of State Regulations § 78–16–7.1 exists is to prevent the exact situation present in this case and to ensure that a support obligor utilizes the maximum number of exemptions to which he is entitled, in this case seven, in the child support calculations.

◼ The child support guidelines identify which deductions from gross income are permissible.[4] *See* 6 W.Va.C.S.R. §§ 78–16–8 to –12. Included in the permissible deductions are those required by law, such as social security taxes, those required by an employer or union as a condition of employment, and those which are for the benefit of the support obligor's children, such as "hospital insurance and medical, dental or optical insurance," as well as "extraordinary medical expenses, costs of child care needed to allow a custodial parent to work or other expenses incurred because of the special needs of a child." *See* 6 W.Va.C.S.R. §§ 78–16–8, –9, –12 and 12.2. It is unclear from the record whether the deductions from the Appellee's gross income of $21.87 for long-term disability insurance and $48.76 for supplemental insurance were for the benefit of the children or for himself. None of the regulations permit charitable deductions like the one taken by the Appellee. Credit union deductions such as that taken by the Appellee are only permissible where, for example, a loan was taken out for the benefit of the child. *See* 6 W.Va.C.S.R. § 78–16–12.2 (Example 1). Thus, the Appellee's credit union deduction taken to pay a loan for his second wife's car is clearly not permissible.

◼ With regard to the Appellant's claim that the trial court improperly allowed a $450 self-support deduction, 6 West Virginia Code of State Regulations § 78–16–17.1.3 provides, in pertinent part, that "[w]here a support obligor is remarried and both the support obligor and his or her present spouse are fully employed ... [t]he support obligor will be allowed ... $365, as his or her minimum presumptive need."[5] Since the Appellee and his current wife are fully employed, the trial court erred in allowing the $450 self-support deduction.

In the present case, while the trial court explained what it had done concerning the above-referenced deductions, it gave no specific reasons for not following the guidelines as mandated by the *Gardner* decision. *See* 184 W.Va. at 261–62, 400 S.E.2d at 269–70, Syl Pt. 3. Consequently, the trial court erred in calculating the child support award,

---

4. We note at the onset that review of cases involving the application of the child support guidelines would be much easier for both the lower court and this Court if deductions taken from gross income to arrive at net income were specifically itemized.

5. According to 6 West Virginia Code of State Regulations § 78–16–16, the court or family law master can deviate from the presumptive minimum need if such deviation is supported by convincing evidence. If such deviation occurs, the court or family law master should give specific reasoning.

and upon remand should adhere to the child support guidelines in a manner consistent with this opinion.

■ As an ancillary matter, we briefly address the Appellee's cross-assignments of error. First, the Appellee maintains that the trial court should have attributed some amount of income to the Appellant which would have reduced his support obligation. The trial court's findings in this case on the issue of the Appellant's income-earning ability indicate that

1. The Plaintiff has a degree in education and last worked in her field full-time during the 1975–76 school year. She did not work during the marriage, and, after the separation of the parties she met the requirements to teach in West Virginia by earning six college credits. However, she has not been able to obtain full-time employment due to the economic climate in this area and has worked as a substitute teacher earning Sixteen Hundred Dollars ($1600.00) in 1990; Twenty-four Hundred Dollars ($2400.00) in 1991; and Thirty-one Hundred Dollars ($3100.00) in 1992.

2. The Plaintiff has made bona fide efforts to obtain full-time employment and has not been successful.

3. The Plaintiff is now and plans to continue taking courses in education and counselling so that she may be able to qualify for employment.

In making the above-referenced findings, the trial court correctly concluded that to attribute income to the Appellant would be inappropriate since 6 West Virginia Code of State Regulations §§ 78–16–4.1.1, –4.1.1.2 & –4.1.1.4 provide, in pertinent part, that

income shall not be attributed to a support obligor ... [where] [s]uch support obligor is pursuing a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children ..., including, ... education; [or where] [s]uch support obligor has made diligent efforts to find and accept available suitable work....

Next, although the trial court found that "[t]he Defendant's present wife is employed and earns Twenty-four Thousand Dollars ($24,000.00)," there is no indication in the Melson Formula worksheet utilized by the lower court in calculating the child support award that the Appellee's wife's income was factored into the calculation in any manner. Accordingly, the trial court committed no error on this issue. Further, the trial court properly allowed a $270 [6] deduction for the Appellee's children from his current marriage. This deduction was made pursuant to 6 West Virginia Code of State Regulations § 78–16–2.6.2 which provides for a deduction from income under the standard of living adjustment for "[o]ther primary support obligations owed to children of the support obligor not of the union of the parties to the case, unless such obligations have been deducted from income." This deduction properly takes into account the support obligor's financial obligations owed to the children of his current marriage without ignoring the same financial obligations owed to the children of the previous marriage. A support obligor's responsibilities to his children from a previous marriage should in no way be diminished because the children of the previous marriage no longer recognize the benefit of having the support obligor present in the home, even though subsequent children have been born.[7] Finally, with regard to the Appellee's claim that a deduction from his net income for alimony should have been taken, pursuant to the application of the Melson Formula, the amount of alimony actually paid should be figured into the Appellant's monthly net income and deducted from the Appellee's net income. *See* 6 W.Va.C.S.R. § 78–

---

6. The amount of $270 was arrived at through the application of 6 West Virginia Code of State Regulations § 78–16–17.1 which provides, in pertinent part, that "[t]he presumptive minimum needs of the several members of a given household are as follows: ... Third and Fourth members $135 per month. The Appellees two children from his current marriage are the third and fourth members of his household.

7. Obviously, the children of a support obligor from a subsequent continuing marriage will receive the ancillary benefits from residing with the obligor, such as the expenditures the obligor makes for shelter and other everyday living expenses.

16–8.1. Thus, the trial court erred in its ruling concerning alimony as it relates to the child support determination.

## B. RETROACTIVITY OF CHILD SUPPORT AWARD

■ The next issue is whether the trial court imposed the wrong effective date for the increased support award.[8] The December 30, 1992, order indicates that November 7, 1991, was the effective date for the increase in child support payments from $720 to $1,136. The November 7, 1991, date was presumably chosen by the trial court since it was the first time the trial court conducted an evidentiary hearing on the child support issue following the court-ordered remand of this case. *See Wood,* 184 W.Va. at 744, 403 S.E.2d at 761. The Appellant argues that as a matter of law, upon a reversal and remand from a child support order, the proper support award should be made effective as of the date of the original award from which the appeal was taken. The Appellee argues that the trial court did not abuse its discretion in deciding the effective date of the child support award.

■ In determining whether the trial court has decided the proper effective date of child support awards, this Court has generally relied upon the following standard of review set forth in the syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977): "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." We recently applied this standard of review to determine the appropriateness

of effective dates of child support awards in *Downey v. Kamka,* 189 W.Va. 141, 428 S.E.2d 769 (1993) and *Marsh v. Marsh,* 183 W.Va. 279, 395 S.E.2d 523 (1990).

In the *Downey* decision, the parties entered into an agreed temporary order concerning custody, child support and exclusive use and possession of certain marital assets. In the recommended decision of the family law master entered on March 25, 1991, an increase in child support from $800 to $1148.50 per month was ordered based upon the child support formula. 189 W.Va. at 142, 428 S.E.2d at 770. The circuit court affirmed the family law master's recommended decision on October 1, 1991, and that date became the effective date of the increase in child support. *Id.* On appeal, the appellant sought a change in the effective date of the increase in child support from October 1, 1991, the date of the final order, to March 25, 1991, the date of the recommended decision. *Id.* In deciding whether the trial court abused its discretion in setting the effective date of the support award, we indicated that although there was an unexplained delay between when the recommended decision was rendered and when the circuit court reviewed and affirmed the family law master's recommended decision,[9] the record lacked any evidence which demonstrated that the effective date set by the circuit court was an abuse of discretion. *Id.* at 142–43, 428 S.E.2d at 770–71.

Similarly, in the *Marsh* decision, this Court was asked to determine whether the trial court abused its discretion in setting the effective date for a reduction in child support. The appellant filed a petition for reduction of child support on June 3, 1987. On December 10, 1987, the last hearing on the

---

8. Rule 19 of the newly enacted Rules of Practice and Procedure for Family Law (effective October 1, 1993) offers guidance with regard to the retroactivity of temporary orders but the rules fail to address the question currently before the Court concerning the retroactivity of final orders. Rule 19 of the Rules of Practice and Procedure for Family Law provides: "A family law master or circuit court granting temporary relief in the form of alimony or child support shall, except for good cause shown, make such award of alimony or child support retroactive to the date of service of the motion for temporary relief upon the opposing party."

9. West Virginia Code § 48A–4–10 (1992) provides that the circuit court shall review the recommended decision of the family law master and the circuit court order entered pursuant to that review "shall be entered not later than ten days after the time for filing pleadings or briefs has expired or after the filing of a notice or notices waiving the right to file such pleading or brief." W.Va.Code § 48A–4–10(e). We note that in 1993 West Virginia Code § 48A–4–10 was changed to West Virginia Code § 48A–4–20. No substantive changes in the statute were made.

matter was conducted by the family law master. The family law master then recommended on September 19, 1988, that the appellant's child support payments be reduced from $1,000 per month to $510 per month, beginning October 1, 1988. The circuit court adopted the recommendations of the family law master. 183 W.Va. at 281, 395 S.E.2d at 525. Upon appeal, this Court upheld the October 1, 1988, effective date set by the circuit court, stating

> There is no statute or rule which specifies the time in which a reduction or increase in child support should commence. Although the authority of the circuit court to modify child support awards is prospective only and does not apply to arrearages, the determination as to the time in which the reduction in payments should take effect is otherwise within the sound discretion of the court....

*Id.* at 282, 395 S.E.2d at 526.

Several factors distinguish *Marsh* and *Downey* from the present case. In *Marsh,* the trial court was presented with a support obligor who had repeatedly been through periods of employment and unemployment resulting ultimately in a decrease in income. Facts such as this involve greater subjectivity and discretion by the trial court in trying to ascertain the facts and determine retroactivity of a child support award. This is quite different from the present case where the trial court was faced with a factually clearcut situation in that the court had all the financial information before it and simply had to apply the child support guidelines. In *Downey,* the trial court properly had greater discretion in determining the retroactivity of the award because the parties had entered into an agreed temporary order involving child support as well as the exclusive use and possession of certain marital assets. 189 W.Va. at 142, 428 S.E.2d at 770. Moreover, there was a substantial dispute between the parties as to whose actions occasioned the delay in the proceedings. *Id.* at 143, 428 S.E.2d at 771.

In contrast, in the present case, when the trial court initially determined the child support award, the court failed to utilize the child support guidelines. *See Wood,* 184 W.Va. at 749, 403 S.E.2d at 766. Furthermore, the new Rules of Practice and Procedure for Family Law (effective October 1, 1993) give some guidance by way of analogy. Rule 19 provides that the court in granting temporary relief in the form of child support or alimony should make the award retroactive to the date the motion for temporary relief was served upon the opposing party. Thus, in cases such as this, where a court fails to properly apply the child support guidelines to a straightforward factual scenario without providing specific reasoning for such failure as required in *Gardner,* the child support shall be retroactive to the date the pleading seeking child support was initially filed. *See* 184 W.Va. at 261–62, 400 S.E.2d at 269–70, Syl. Pt. 3. Such support becomes an entitlement and the right to receive the child support as properly calculated under the formula vests. Consequently, the trial court erred in determining the retroactivity of the child support award.

## II.

## ALIMONY

The next issue involves the trial court's extension of the Appellant's rehabilitative alimony for a two-year period at a reduced amount of $300 per month. The original rehabilitative alimony award, in the amount of $500 per month, was scheduled to terminate on September 15, 1992.[10] The Appellant argues that the trial court erred in failing to convert the Appellant's rehabilitative alimony into permanent alimony. The Appellant also asserts that the trial court should have awarded an amount of rehabilitative alimony greater than the $300 awarded. Finally, the Appellant maintains that the rehabilitative alimony award should have been effective as of September 15, 1992, the date of the last alimony payment, instead of the court-ordered date of January 1, 1993. In contrast, the Appellee, argues that the trial court erred in extending the Appellant's alimony for an additional two-year period.

---

**10.** The Appellant did not appeal the original rehabilitative alimony award the first time this case was before this Court. *See Wood,* 184 W.Va. at 744, 403 S.E.2d at 761.

We have not had the opportunity to address whether an original award of rehabilitative alimony can be extended or modified into a permanent alimony award. In order to determine whether such an extension or modification is proper, it is important to understand the concept of rehabilitative alimony as explained in *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984), the seminal case on rehabilitative alimony in West Virginia. That case involved the appellant's contention that the trial court erred in awarding rehabilitative alimony. The appellant was divorced at age fifty-three, after twenty-five years of marriage. She had only a high school education and worked as an application processor for Appalachian Life Insurance Company, earning a net monthly pay of $438. *Id.* at 202, 314 S.E.2d at 75. Her testimony at trial indicated that her monthly expenses, including mortgage payments on the family home totaled $1,669.80. Her testimony further revealed that she had attempted to find better paying employment, but that the potential employers showed little interest in her because of her age and limited experience. Because she could only carry six academic course hours a semester, given the fact that she had to work full-time, she had to forego returning to college to obtain a degree. *Id.*

In *Molnar,* we upheld the rehabilitative alimony award, stating that "[t]he concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." *Id.* at 201, 314 S.E.2d at 74, Syl Pt. 1. We emphasized, however, that the "key ingredient" in determining whether rehabilitative alimony should be awarded "must be a realistic assessment of the dependent spouse's potential work skills and the availability of a relevant job market." *Id.* at 204,

314 S.E.2d at 77. Further, the trial court must also inquire into "whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it [rehabilitative alimony] should be granted." *Id.* at 205, 314 S.E.2d at 78. Lastly, the trial court should give consideration to "the continuing jurisdiction of the court to modify an award of rehabilitative alimony in the event that the dependent spouse is unable to meet the terms of the rehabilitative plan." *Id.*

Generally, once an award of rehabilitative alimony has been made, to justify a modification of that award, the petitioner must produce evidence demonstrating that a substantial change in the circumstances of the parties has occurred. *Louk v. Louk,* 184 W.Va. 164, 399 S.E.2d 875 (1990). As we held in the syllabus of *Louk,*

'By its terms, *W.Va.Code* § 48-2-16 [1976] requires a circuit court to consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding.' Syllabus point 2, *Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982).[11]

*Id.* 184 W.Va. at 165, 399 S.E.2d at 876.

This Court has already indicated that modification of rehabilitative alimony may become a necessity where the dependent spouse is unable to meet the rehabilitative plan and therefore the lower court maintains continuing jurisdiction as expressed in *Molnar. See* 173 W.Va. at 205, 314 S.E.2d at 78. Circumstances between the parties can substantially change once rehabilitative alimony is awarded, and where such change of circumstances justify an award of rehabilita-

11. West Virginia Code § 48-2-16 (1992) has been amended since *Yanero* to include other factors, including those listed in syllabus point 2 of *Yanero,* which the trial court must consider in determining the amount of alimony. *See* 171 W.Va. at 89, 297 S.E.2d at 864. Some of those factors include the length of time the parties were married, the ages and the physical, mental and emotional condition of each party, the edu-

cational qualifications of each party, the anticipated expense of obtaining education and training which would increase income-earning abilities, the costs of educating minor children, the tax consequences to each party, the extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside of the home. W.Va.Code § 48-2-16.

tive alimony, the award can be extended or modified to a permanent alimony award.[12]

■■■■■ Consequently, we hold a rehabilitative alimony award may be extended or modified into a permanent alimony award where the dependent spouse demonstrates a substantial change in the circumstances under which rehabilitative alimony was awarded. In determining whether a substantial change of circumstances exists which would warrant a modification of a rehabilitative alimony award to a permanent alimony award, the trial court may consider a reassessment of the dependent spouse's potential work skills and the availability of a relevant job market, the dependent spouse's age, health and skills, the dependent spouse's inability to meet the terms of the rehabilitative alimony plan, as well as any of the other factors set forth in West Virginia Code § 48–2–16. Finally, the trial court should not consider modifying a rehabilitative alimony award to a permanent alimony award until the dependent spouse has had a reasonable amount of time to meet the terms of the rehabilitative alimony award.

In this case, the trial court found that the Appellant has a degree in education but has not worked in her field full-time since 1976. The Appellant did not work at any time during the seventeen-year marriage. After the Appellant and Appellee separated, the Appellant earned six college credits in order to meet the requirements to teach in West Virginia. The trial court found, however, that due to the economic climate of this State, the Appellant was unable to obtain full-time work and was forced to work as a substitute teacher. Working as a substitute teacher, she earned less than $10,000 during the three-year period from 1990 to 1992. The trial court also found that the Appellant had made "bona fide efforts to obtain full-time employment." An example of these efforts is that the Appellant was taking courses in education and counselling in order to qualify for full-time employment. The trial court specifically based the continued rehabilitative alimony award upon the following findings of fact which it deemed to create a substantial change in circumstances:

5. Plaintiff needs approximately Twenty-five Hundred Dollars ($2500.00) for tuition and books plus travel and parking expenses in order to complete the training. . . .

6. The Plaintiff has no resources with which to pay for the above for three reasons: 1) the child support of Seven Hundred Twenty Dollars ($720.00) for three children had to be supplemented by her out of her alimony so that the children's needs would be met; (2) Defendant did not pay Plaintiff the equitable distribution award which was approximately Eighteen Thousand Dollars ($18,000.00) and Defendant's Petition for Bankruptcy has stayed any action on her part to collect said monies, and; (3) Plaintiff had to make mortgage payments on the dwelling.

We conclude that the trial court properly granted a modification of the original rehabilitative alimony award based on the impact that the Appellee's filing of bankruptcy proceedings had on the Appellant, combined with the Appellant's need for further training and education in order to obtain full-time employment. Although, we are not convinced that the Appellant at this time has demonstrated a substantial change in circumstances which would warrant modifying the rehabilitative alimony award to permanent alimony, this does not mean that the Appellant may not qualify for such a modification at a later time. Thus, we find no error was committed by the trial court on this issue.

---

12. Other jurisdictions allow modifications of rehabilitative alimony. *See Kilgore v. Kilgore*, 572 So.2d 480, 483 (Ala.Civ.App.1990); *In re Marriage of Berland*, 215 Cal.App.3d 1257, 1261–62, 264 Cal Rptr. 210, 211–12 (1989); *In re Marriage of Kusper*, 195 Ill.App.3d 494, 498–500, 142 Ill. Dec. 282, 284–86, 552 N.E.2d 1023, 1025–27 (1990); *Gordon v. Gordon*, 26 Mass.App.Ct. 973, 974–975, 528 N.E.2d 876, 878 (1988); *Shifman v. Shifman*, 211 N.J.Super. 189, 193–95, 511 A.2d 687, 689–90 (1986); *Weigel v. Kraft*, 449 N.W.2d 583 (N.D.1989); *Johnson v. Johnson*, 155 Vt. 36, 40–42, 580 A.2d 503, 506–07 (1990); *see also Hamilton v. Hamilton*, 508 So.2d 760, 762 (Fla.Dist.Ct.App.1987) (ordering conversion of rehabilitative alimony award into an award of permanent alimony); *Shifman*, 211 N.J.Super. at 193, 511 A.2d at 688 (holding that motion to convert rehabilitative alimony award into permanent alimony award made more than six months prior to scheduled termination of rehabilitative alimony is premature).

■ With regard to the effective date of the modified alimony award made by the trial court, such matters are within the sound discretion of the trial court and will not be changed on appeal unless an abuse of discretion is shown. Syllabus, *Nichols*, 160 W.Va. at 514, 236 S.E.2d at 36.

## III.

### ATTORNEY FEES

■ The last issue before the Court is whether the trial court erred in refusing to award attorney's fees and costs with regard to the Appellant's petitions for child and spousal support due to the Appellee's bankruptcy proceeding. The Appellant argues that the filing of bankruptcy gave the Appellee the benefit of, an automatic stay precluding the Appellant from seeking attorney's fees and costs arising out of the previous appeal of this case upon remand to the circuit court, as well as precluding the Appellant from seeking a determination of the child support issue on remand until the bankruptcy stay was lifted. *See Wood*, 184 W.Va. at 744, 403 S.E.2d at 773. However, on September 25, 1991, the United States Bankruptcy Court for the Western District of Pennsylvania lifted the automatic stay with regard to Appellee's child support obligation. Consequently, the Appellant maintains that once the automatic stay was lifted, she was entitled to have her request for attorney's fees and expenses fully considered on her subsequent applications for such fees, filed on April 3, 1992. The Appellee argues only that the Appellant improperly requests attorney's fees without the benefit of the circuit court holding a hearing on the reasonableness and necessity of such fees.

With regard to exceptions to discharge within a bankruptcy proceeding,

(a) A discharge under ... [various sections within the title] does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other or-

der of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support

. . . .

11 U.S.C.A. § 523(a)(5) (West 1993).

■ Questions of whether payments pursuant to a divorce decree are in the nature of maintenance, alimony or child support and therefore nondischargeable in bankruptcy are generally thought to be federal questions determined by the bankruptcy court. *In re Anderson*, 62 B.R. 448, 454 (Bankr.D.Minn. 1986); *In re Manners*, 62 B.R. 656, 658 (Bankr.D.Mont.1986); *In re Sposa*, 31 B.R. 307, 309 (Bankr.E.D.Va.1983). However, the bankruptcy court can look to state law and particularly the divorce decree for guidance in the determination of whether a payment, attorney fees for instance, is in the nature of maintenance, alimony or child support. *See In re Barth*, 37 B.R. 357, 358 (Bankr.D.N.D. 1984); *In re Sposa*, 31 B.R. at 311.

Bankruptcy courts have interpreted 11 U.S.C.A. § 523(a)(5) to encompass nondischargeability of attorney fees and costs as long as those fees are in the nature of alimony, maintenance or child support. *In re Jackson*, 58 B.R. 72 (Bankr.W.D.Ky.1986) (holding that two-thirds of underlying debt was nondischargeable maintenance arrearage, therefore two-thirds of attorney's fees and interest was also nondischargeable); *In re Barth*, 37 B.R. at 357 (finding award of attorney's fees in nature of support payment and therefore not dischargeable); *In re Manners*, 62 B.R. at 656 (holding that attorney's fee award was to enforce the debtor's support obligations which were in nature of support); *In re Sposa*, 31 B.R. at 307 (stating that attorney's fees arising out of alimony and support payments awarded in post-divorce ancillary proceedings are nondischargeable provided fees are in nature of

child support, alimony or maintenance); *see also, In re Anderson,* 62 B.R. at 448; *In re Snider,* 62 B.R. 382 (Bankr.S.D.Tex.1986).

Thus, once an automatic stay is lifted in a bankruptcy proceeding, the circuit court is not precluded from entering an award of attorney fees in a divorce action. However, pursuant to 11 U.S.C.A. § 523(a)(5), an award of attorney fees is only nondischargeable in a bankruptcy proceeding if such award is in the nature of support, alimony or maintenance. An award of attorney fees and costs is in the nature of support, alimony or maintenance when said fees and costs are incurred as a result of a party's attempt to obtain or modify child support, alimony or maintenance. To assist the bankruptcy court in its determination, the circuit court's order must be clear as to whether an award for attorney fees and costs is in the nature of child support, alimony or maintenance.

In the present case, the trial court was acting under a misapprehension of bankruptcy law in concluding that the bankruptcy proceedings prohibited the court from ruling on Appellant's request for attorney's fees and costs. We, therefore, find that the trial court erred, and upon remand, order that a determination of Appellant's request for reasonable attorney's fees and costs be undertaken. Moreover, it is clear in this case that an award of attorney's fees and cost is in the nature of child support, alimony or maintenance and the trial court should specifically state this in its order.

Based on the foregoing, the decision of the Circuit Court of Hancock County is reversed, in part, and remanded for further proceedings consistent with this opinion.

Reversed, in part, and Remanded.