488 S.E.2d 354

**Scott E. PETRUSKA, Plaintiff Below, Appellee**

v.

**Brigitte I. PETRUSKA, Defendant Below, Appellant.**

**No. 22981.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1996.

Decided Nov. 15, 1996.

R. Joseph Zak, Zak & Associates, Charleston, for Appellant.

Frances W. McCoy, Lewis, Friedberg, Glass, Casey & Rollins, Charleston, for Appellee.

RECHT, Judge: [1]

In this divorce proceeding, Brigitte I. Petruska appeals that portion of a final order of

---

the Circuit Court of Kanawha County, which denied her permanent alimony and refused to require Scott E. Petruska, her former husband, to pay for the extraordinary expenses associated with the sporting activities of the parties' child. On appeal, Ms. Petruska argues that the circuit court erred: first, in granting her retroactive rehabilitative alimony rather than permanent alimony, and second, in failing to increase the child support award to pay for their child's extraordinary expenses. In cross-assignments of error, Mr. Petruska argues that his support obligations should have been credited with overpayments, and that his support for the child's residence should be factored into the child support calculations. After reviewing the record, we find no merit in Mr. Petruska's cross-assignments of error, and except for the duration of the rehabilitative alimony award, we find that the circuit court did not abuse its discretion in either the award of rehabilitative alimony or child support, and therefore, we affirm, in part, and reverse, in part, the circuit court's decision and remand with directions to enter an order extending the rehabilitative alimony award until the end of the dependency of the parties' child.

## I.

## FACTS AND BACKGROUND

After almost eleven years of marriage, Mr. Petruska filed for a divorce on April 2, 1992, on the grounds of irreconcilable differences. The parties have a daughter who was born on July 23, 1982. Although Ms. Petruska has been primarily a homemaker during most of the marriage, before a 1983 move of the family to Singapore to advance Mr. Petruska's career, she had been employed as an international banking account translator. After moving to Pinch, West Virginia with her daughter in January 1990, Ms. Petruska operated her own business for about two years; however, the business closed in 1992, about a year after the parties separated in February 1991.

Mr. Petruska's employment required him to move to Singapore in 1983 and to Tokyo in 1988. Finally, he returned to New York City in September 1990. Mr. Petruska's salary while working overseas was substantial; however, with his return to the United States, his income dropped. In 1990 he earned $275,096; in 1991 he earned $219,132; in 1992 he earned $167,224.11; and, in 1993 he earned $142,000.

The move of Ms. Petruska and their daughter to West Virginia in 1990 was a mutual decision of the parties. The parties' daughter has been involved in competitive swimming since she was four years old and receives professional coaching through the University of Charleston. The expenses related to the daughter's swimming exceed $850 per month. Because of the swimming practices and competitive meets, the daughter has a hectic schedule requiring a substantial commitment of time from Mrs. Petruska.

On appeal, Ms. Petruska maintains that the circuit court erred in failing to award her permanent alimony. Ms. Petruska, who was born and educated in Germany, is now 42 years old and except for operating her own business, has been out of the job market since 1983. Ms. Petruska maintains that her business closed because it was not successful. An expert for Mr. Petruska, who did not interview Ms. Petruska, thought she could be employed in the banking industry in the mid-America states. Ms. Petruska's expert thought she could be re-employed here in Charleston with an annual salary of about $16,000 per year. The circuit court adopted the family law master's finding that Ms. Petruska had refused to re-enter the work force. In her brief, Ms. Petruska argues she is employed as a homemaker and spends her time meeting the needs of their daughter. Ms. Petruska maintains that she should receive either permanent alimony or at least rehabilitative alimony during the dependency of their daughter.

Mr. Petruska maintains that Ms. Petruska, as a highly qualified individual with substantial experience in international banking, has

an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme

Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

excellent marketable skills which should assist her to re-enter the labor force. Mr. Petruska also notes that because his income has declined, he is no longer able to support the same style of life the parties enjoyed when he was employed overseas.

Ms. Petruska argues that the circuit court erred in failing to award an additional $850 per month in child support for the daughter's practice and competitive swimming meets. There is no dispute that the amount of child support based on the earnings of the parties was properly calculated, and Mr. Petruska is required to pay $950 per month. Ms. Petruska maintains that Mr. Petruska should be required to continue to support their daughter's swimming activities because such support would continue the same standard of living as they would have enjoyed if the family unit remained intact. Mr. Petruska argues his financial ability to support such activities has changed and that the swimming activities at the present level are not essential.

Mr. Petruska, in his cross-assignments of error, wants credit for what he labels as overpayments in support and alimony and seeks relief for the missed investment opportunities related to the house where his daughter lives with her mother.

The family law master recommended that Ms. Petruska be awarded rehabilitative alimony for a period of 48 months retroactive to August 1992. Beginning January 1, 1994 and ending July 1, 1996, the amount of rehabilitative alimony was to be $20,000 per year. The family law master found that Ms. Petruska's living expenses were $1,700 per month and that she was employable at a minimum of $16,000 per year. The family law master found that she has "sufficient time to re-enter the work force and earn the level of income she requires, but that Defendant's demonstrated refusal to so do should not be ignored by the Court as Plaintiff has paid $3,000 in spousal support per month for 17 months."

The family law master noted that Mr. Petruska had supported his daughter's swimming activities and the expenses until the filing of the divorce. The family law master said that the child "is well adjusted, bright, and A student in school and has an exceptional swimming talent." However, although the family law master recommended child support based on the income of the parties, no additional support for swimming was recommended.

Both parties filed exceptions to the recommended decision. The circuit court adopted the family law master's recommendations concerning alimony and child support.[2] The circuit court also provided that Ms. Petruska's alimony be reduced to $1,000 per month "until [Mr. Petruska] is re-employed," which occurred on November 1, 1994, about ten weeks after the temporary reduction in spousal support was ordered; but this minor addition did not substantially change the alimony provision.

Ms. Petruska appealed asserting: first, that the circuit court erred in failing to award "permanent alimony, or at the very least rehabilitative alimony during the infancy of the child;" and second, that the circuit court erred in failing to award an addition $850 per month in child support for the daughter's swimming expenses.

## II.

## DISCUSSION

### A. Standard of Review

■ Because the circuit court adopted the recommendations of the family law master on the issue of alimony and child support, we apply the standard of review expressed in Syl. pt. 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), which states:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged

2. In her petition and brief, Ms. Petruska raised an assignment of error concerning the award of attorney's fees. However, in her reply brief, Ms. Petruska conceded that no final order had been entered concerning attorney's fees. By order entered on November 3, 1994, the circuit court bifurcated and remanded the attorney's fees issue to the family law master for further hearing and the taking of evidence. Because the issue of attorney's fees is not properly before this Court, we decline to comment on that issue.

standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*In accord* Syl. pt. 1, *State, Dept. of Health and Human Resources, Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W.Va. 759, 466 S.E.2d 827 (1995); *Carter v. Carter*, 196 W.Va. 239, 244, 470 S.E.2d 193, 198 (1996).

■ We review the questions of alimony and child support in excess of the recommended guidelines under an abuse of discretion standard. In the Syllabus of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977), we held:

> Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused

*See Banker v. Banker*, 196 W.Va. 535, 548, 474 S.E.2d 465, 478 (1996); *Carter v. Carter*, 196 W.Va. at 244, 470 S.E.2d at 198; Syl. pt. 2, *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993); Syl. pt. 8, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990); Syl. *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985).

In *Banker v. Banker*, we gave the following explanation of the three principal ways through which an abuse of discretion might arise:

> An abuse of discretion occurs in three principal ways: (1) when a relevant factor that should have been given significant weight is not considered: (2) when all proper factors, and no improper ones, are considered, but the family law master in weighing those factors commits a clear error of judgment: and (3) when the family law master fails to exercise any discretion at all in issuing the order.

*Banker v. Banker*, 196 W.Va. at 548, 474 S.E.2d at 478.

Mindful of this standard of review, we address the issues appealed considering, first, the question of alimony, and second, the question of extraordinary support for the daughter's sporting activities.

### B. *Alimony*

W. Va.Code 48–2–16(b) (1984) lists sixteen (16) factors that should be considered "in determining the amount of alimony." The final factor allows the consideration of any additional factors needed for a "fair and equitable grant of alimony."[3]

---

3. W. Va.Code 48–2–16(b) (1984) lists the following factors for consideration in determining the amount of maintenance/alimony:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–23] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

In the case *sub judice,* the circuit court adopted the family law master's recommendation of rehabilitative alimony for a 48–month period retroactive to August 1992. Beginning January 1, 1994 until July 1, 1996, the alimony was to be $20,000 per year. According to the order, the amount of alimony was based on Ms. Petruska's monthly living expenses of $1,700 and her ability to be employed at $16,000 per year. The 48 months was considered a reasonable time for re-entry into the labor force "but that Defendant's demonstrated refusal to so do should not be ignored by the Court as Plaintiff has paid $3,000.00 in spousal support per month until July, 1994."

*Molnar v. Molnar,* 173 W.Va. 200, 204, 314 S.E.2d 73, 77 (1984) lists "six criteria relating to the setting of alimony . . .:(1) the financial resources of the parties, (2) the time necessary for the dependent spouse to acquire job skills, (3) the parties' accustomed standard of living, (4) the duration of the marriage, (5) the age and health of the dependent spouse, and (6) the needs of the supporting spouse."

■ In reviewing the record, we note that rehabilitative alimony is appropriate in this case because of Ms. Petruska's age, training and work experience. Syllabus point 3 of *Molnar v. Molnar* states:

> There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

We also note that the financial resources of the parties have changed thereby requiring a change in the accustomed standard of living. However, the parties have a child who has had the benefit of an at-home mother, whose career was sidetracked for the benefit of her family and her spouse's career. Her attempt to re-enter the labor force by starting her own business was not successful. The recommended alimony appears to punish a nonworking spouse who desires to continue a role that the parties had agreed to during the marriage. The disparity of the parties' earning potential will continue for at least as long as the mother gives her primary emphasis to the care of the parties' child. Because the family law master's recommended decision committed a clear error in judgment in failing to consider the disparity of income and the role of custodian of a minor child, we find an abuse of discretion in terminating the rehabilitative alimony during the dependency of the child.[4]

■ However, given the disparity of income and the pre-separation economic and social decisions of the parties, we find that the circuit court did not abuse its discretion in refusing to credit Mr. Petruska for temporary payments which exceeded the amounts of the final required payments. This credit/debit analysis reflects Mr. Petruska's banking background; however, the bottom line in family law should not be strictly based on the flow of money. The record indicates no abuse of discretion based on the evidence when the temporary support was ordered. Given the parties' respective economic positions, requiring repayment would be unjust to the dependent child and her mother. We, therefore, find no merit in Mr. Petruska' cross-assignments of error seeking credit for temporary support payments.

### C. *Extraordinary Child Support*

Ms. Petruska also maintains that the circuit court erred in failing to require Mr. Petruska to pay an additional $850 per month in child support in order for their daughter to continue with her avid interest in

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

4. The record in this case does not demonstrate that maintenance/alimony will be required once Ms. Petruska is able to work in a position for which she is qualified, rather than a low level entry position. If an award of permanent alimony becomes appropriate, the matter can be considered by the circuit court under our recent holding in *Banker v. Banker,* 196 W.Va. at 543–48, 474 S.E.2d at 473–78.

swimming.[5] We begin by noting that Mr. Petruska, under the child support guidelines that were used below to determine the amount of child support, is required to pay $950 per month. Ms. Petruska argues that the child's activities should not be curtailed because of the divorce. Mr. Petruska argues that the child's swimming does not have a great potential for a college scholarship; and that because he no longer is earning the overseas salary, he can no longer afford the extraordinary swim expenses.

In *Bettinger v. Bettinger*, 183 W.Va. 528, 540, 396 S.E.2d 709, 720 (1990) we explained that the child support guidelines include a "SOLA" or "standard of living adjustment," which is a based on defined percentages for the number of children. In this case, the basic child support was $180 and SOLA was calculated to be $874.20. After including Ms. Petruska' imputed income, the child support guidelines indicated that Mr. Petruska should pay $950 per month in child support. We noted in Syl. pt. 12 of *Bettinger v. Bettinger*, that some limited discretion exists to abandon the guidelines:

> A decision not to follow the SOLA percentages must be undertaken in light of the legislative preference in W.Va.Code, 48A–2–8(b) (1989), that child support should be keyed to "the level of living such children would enjoy if they were living in a household with both parents present." If the family law master or circuit court determines that SOLA percentages under 6 W.Va.C.S.R. § 78–16–2.7.2 should not be used, an explanation must be given.

W.Va.Code 48A–1B–14 (1996) recognizes that the child support may be disregarded in appropriate circumstances by providing:

> (a) If the court or master finds that the guidelines are inappropriate in a specific case, the court or master may either disregard the guidelines or adjust the guide-

lines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents. In either case, the reason for the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order). Such findings clarify the basis of the order if appealed or modified in the future.

> (b) These guidelines do not take into account the economic impact of the following factors and can be possible reasons for deviation:

> (1) Special needs of the child or support obligor;

> (2) Educational expenses for the child or the parent (i.e. those incurred for private, parochial, or trade schools, other secondary schools, or post-secondary education where there is tuition or costs beyond state and local tax contributions);

> (3) Families with more than six children;

> (4) Long distance visitation costs; or

> (5) The child resides with third party.[6]

In this case, the circuit court followed the child support guidelines including the SOLA percentage. Given that Mr. Petruska no longer enjoys his overseas salary, even if the child was living in a household with both parents present, it appears unlikely that $850 per month would be spent on swimming activities. We note that none of the circumstances outlined in W. Va.Code 48A–1B–14(b)(1996) is argued as a reason for deviation. Although long distance visitation will require expenditures, these expenses are primarily born by the father who has not asked for a reduction in child support. Given the evidence presented, we find no abuse of discretion in the circuit court's refusal to require Mr. Petruska to pay an additional $850

---

**5.** In a cross-assignment of error, Mr. Petruska seeks "credit for the freezing of his interest in the house until his daughter is grown." First we note that W.Va.Code 48–2–15(b)(5) (1996) allows the circuit court to require the continued use of the marital home "when such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties." We find no merit in this argument because if credit were given, it would be off set by credit for the

other spouse's interest in the house, which also remains frozen.

**6.** Although W. Va.Code 48A–1B–14(b) was adopted by the Legislature in 1996, according to W. Va.Code 48A–1B–1(d) (1996), the effective date for provisions creating the new child support guidelines is July 1, 1997.

per month for sporting activities, and therefore, we find no merit in Ms. Petruska's second assignment of error.

For the above stated reasons, the decision of the Circuit Court of Kanawha County is affirmed, in part, reversed, in part, and remanded with directions to enter an order extending the rehabilitative alimony award until the end of the dependency of the parties' child.

Affirmed, in part, reversed, in part, and remanded.

McHUGH, C.J., and WORKMAN, J., dissent and reserve the right to file dissenting opinions.