IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JORDYN D.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-251**    (Fam. Ct. Raleigh Cnty. Case No. FC-41-2024-D-231)

**ZANE L.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jordyn D.[1] ("Mother") appeals the Family Court of Raleigh County's May 20, 2025, Final Order Establishing Parenting Plan. In that order, the family court adopted the parties' partial agreement as to a 50-50 custodial allocation and set Respondent Zane L.'s ("Father") child support obligation at $350.00 per month, effective May 1, 2025. Father filed a response in support of the family court's order.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were never married but are the parents of a minor child. This matter began when Father filed a petition to establish paternity and a parenting plan for the minor child. On April 25, 2025, this case went to a final hearing wherein the parties agreed that there would be equally shared custody which would be split on a rotating weekly 4/3/3/4 schedule.

Relevant to the issues on appeal, during the hearing, while counsel for Father was laying out the agreement of the parties, a dispute arose as to what would happen with the child if Father had to work on Mondays during his custodial time but there was no school.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Brandon L. Gray, Esq. Father is represented by Amber R. Hinkle, Esq.

Counsel for Mother asked that the exchange of the child be in the morning instead of the afternoon, that way the child could be with Mother instead of waiting all day for Father to get home just to then go to Mother. Father stated that he wanted to see the child after work before the child went to Mother. The family court noted that it could understand Father wanting to see the child after work before he exchanges the child with Mother and that it would be good for the child to grow up knowing what the schedule was going to be. The family court then stated from the bench that it was going to make the exchange in such circumstances at 6:00 pm instead of 5:00 pm so that Father could spend some time with the child after work before the exchange. Mother then inquired as to who would have the child if Father and Father's fiancé both had to work on Monday and there was no school. Father responded that his fiancé works from home but would occasionally be called out to the field, though it was always planned. The family court noted from the bench that it would put in the order that Mother would be contacted to care for the child if Father and his fiancé both had to work but the family court stated it wanted to "keep on the same schedule, because that's what concerns me. I want your child, because of his autism, to have a set schedule." To which Mother responded, "yes, he does well with a schedule."

Later in the hearing, the family court noted it was going to set child support at $350.00 per month, which was a slight variation upward from the guidelines (about $3). The family court also noted that it was going to essentially set everything a little in Mother's favor, including requiring Father to pay seventy-five percent of uncovered medical expenses. Counsel for Mother stated that Mother wanted child support to be retroactive, but did not specify a date. Counsel for Father objected and stated that though Mother previously requested child support at an earlier hearing, she had not filed a financial statement at that time. Counsel for Father asked that the child support be effective May 1, 2025. The family court noted that it had been trying to get the case in for a hearing for a while and acknowledged that when Mother previously made the request for child support, the family court was unable to award it due to Mother's failure to file her financial affidavit at that time. Accordingly, the family court held from the bench that it was going to award child support effective May 1, 2025.

Following the hearing, the family court entered the order on appeal which embodied its rulings from the bench. Relevant to the issues on appeal, the family court set the parenting schedule as agreed by the parties with the caveat that if Father is working during his parenting time and his fiancé is unexpectedly called into work, they shall contact Mother and give her the option to care for the child during such time. The family court's order also set Father's child support obligation at $350.00 per month effective May 1, 2025. It is from this order that Mother appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the

2

findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother first argues that the family court erred by failing to maximize the child's time with Mother during periods when Father is unavailable. We disagree. West Virginia Code § 48-9-101(b) (2001) declares that the best interests of the child are the primary concern in allocating custodial and decision-making responsibilities between parents who do not live together. Courts are empowered to use this standard to fashion custodial arrangements that serve the child's welfare, even when specific statutory factors do not directly address the situation at hand. *See In re T. M,* 242 W. Va. 268, 278, 835 S.E.2d 132, 142 (2019). Here, it is clear that the family court attempted to fashion an allocation that it believed to be in the best interest of the child while accounting for the interests of Father and Mother. The family court's ruling in this regard allowed for the child, who has autism, to maintain a set schedule, allowed for Father to spend time with the child after work and before the exchange with Mother, and required Mother to be the first option for childcare if Father and his fiancé were unavailable. Further, there is nothing in the record before this Court that indicates how often, if at all, the child would be in the care of Father's fiancé and there is nothing to indicate that Father's fiancé is unfit or unable to care for the child. Accordingly, the family court did not abuse its discretion in setting the custodial allocation in this matter.

Next, Mother argues that the family court erred in refusing to retroactively apply child support to an appropriate prior date. We disagree. "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." *Wood v. Wood,* 190 W. Va. 445, 453, 438 S.E.2d 788, 796 (1993). Here, there is no pleading requesting child support in the appendix record before this Court. Further, it appears to be undisputed that the family court could not order child support when initially requested because it did not have Mother's financial information at that time. Given the deferential standard of review, we decline to say that the family court abused its discretion by ordering child support effective May 1, 2025.

Based on the foregoing, we affirm the family court's May 20, 2025, Final Order Establishing Parenting Plan.

Affirmed.

**ISSUED:**  February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White