519 S.E.2d 188

**Nancy H. MAYHEW, Plaintiff Below, Appellant,**

v.

**Robert E. MAYHEW, Defendant Below, Appellee.**

No. 25214.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.

Decided July 14, 1999.

---

Ward D. Stone, Jr., Spilman Thomas & Battle, Morgantown, West Virginia, Attorney for Appellant.

J. David Judy, III, William H. Judy, III, Judy & Judy, Moorefield, West Virginia, Attorneys for Appellee.

DAVIS, Justice:

For a second time, this case is before the Court. Nancy H. Mayhew, appellant/plain-

tiff below, (hereinafter referred to as Ms. Mayhew) challenges the ruling of the Circuit Court of Hampshire County as the same relates to the disposition of 24 shares of corporate stock.[1] Specifically, Ms. Mayhew seeks reversal of the circuit court's apportionment and calculation regarding the active and passive appreciation in value of the 24 shares of stock of Mayhew Chevrolet–Oldsmobile, Inc. The stock in question was gifted to Robert E. Mayhew, appellee/defendant below (hereinafter referred to as Mr. Mayhew) by his father. Simply put, Ms. Mayhew asserts that all appreciation in value of Mr. Mayhew's 24 shares of stock was the direct result of active appreciation and therefore any increase in its value is marital property. In contrast, Mr. Mayhew argues that any increase in the stocks's value was the result of passive appreciation and therefore remains his separate property. Accordingly, Mr. Mayhew presents as a cross-assignment of error the lower court's ruling that the sum of $60,525.00 represents the active appreciation of Mr. Mayhew's separate property and, as such, is marital property subject to equitable distribution. Finally, Mr. Mayhew assigns as error the circuit court's ruling that there be no adjustment to the amount and duration of alimony awarded to Ms. Mayhew.[2] We conclude that the lower court erred in its analysis regarding the active appreciation of the 24 shares of stock in Mayhew Chevrolet–Oldsmobile, Inc. and further conclude that the circuit court abused its discretion by determining that the active appreciation was

determined to be $60,525.00. Moreover, we conclude that as a result of Mr. Mayhew's failure to preserve at the trial court level his appeal of an alimony award to Ms. Mayhew, we now decline to address the issue.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In *Mayhew v. Mayhew*, 197 W.Va. 290, 475 S.E.2d 382 (1996), (hereinafter referred to as *Mayhew I* ), we affirmed the divorce granted to the parties and resolved other matters. In *Mayhew I*, the Court ruled that Mr. Mayhew had received 24 shares of stock during his marriage, as a gift from his father.[3] As a result of the stock being gifted to Mr. Mayhew, this Court appropriately ruled in *Mayhew I* that the 24 shares of stock were the separate property of Mr. Mayhew. Further, in *Mayhew I*, the Court valued the stock at $457,826.00.[4] However, in *Mayhew I*, we reversed and remanded two specific issues to the circuit court.[5] We instructed the circuit court to make an evidentiary determination as to the monetary value to be assigned to any active and passive appreciation of the 24 shares of corporate stock of Mayhew Chevrolet–Oldsmobile, Inc. held by Mr. Mayhew. Additionally, *Mayhew I* instructed the circuit court to revisit the issue of rehabilitative alimony.

Specifically, *Mayhew I* further directed the circuit court on remand to make two analyt-

1. The circuit court's order adopted, in whole, the recommendations of the family law master. Therefore, unless otherwise indicated, this opinion will refer to the circuit court's order without an independent reference to the family law master's recommendations.

2. Ms. Mayhew's reply brief challenges Mr. Mayhew's right to make cross-assignments of error. Under Rule 10(f), of the Rules of Appellate Procedure, an appellee has the right to make cross-assignments of error. *See Stump v. Ashland, Inc.*, 201 W.Va. 541, 499 S.E.2d 41 (1997); *Petruska v. Petruska*, 200 W.Va. 79, 488 S.E.2d 354 (1996); *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996).

3. Mr. Mayhew became the principal owner of the car dealership approximately 17 months before the divorce action was filed in this case.

4. During the parties' marriage, the Mayhews purchased an additional 10 shares of stock from the car dealership. In *Mayhew I*, we determined that the additional 10 shares of stock which were purchased during the parties' marriage was marital property with a value of $190,760.00. Those 10 shares of stock are not at issue in this appeal.

5. The relevant facts of the marital history and divorce of the Mayhew family is succinctly set forth in *Mayhew I*. We will not repeat those facts in this opinion. *See Green v. Mullins*, 146 W.Va. 958, 962, 124 S.E.2d 244, 247 (1962) ("Reference is made to the two previous opinions of the Court for detailed statements of pertinent facts"); *Earl T. Browder, Inc. v. County Court of Webster County*, 145 W.Va. 696, 699, 116 S.E.2d 867, 869 (1960) ("Because of the detailed statement of pertinent facts in the previous opinion, the facts will be stated herein to a limited extent only").

ical determinations regarding any appreciation in the stock's value. First, a determination of the stock's value had to be made for each date on which the stock was gifted to Mr. Mayhew.[6] Once having determined the stock's value on each gifted date, that value had to be deducted from the stocks' overall valuation of $457,826.00 and awarded to Mr. Mayhew as his separate property. The first analytical step established the gross [7] appreciated value without regard to the appreciation being active or passive. Next, the circuit court was directed to separate the stock's gross appreciated value into passive appreciation or active appreciation. Ms. Mayhew would then be entitled to one-half of the stock's active appreciation based upon the second analytical step.

■ On remand and in its first step analysis, the circuit court determined that the value of the stock on the four dates gifted was $113,045.00. This amount was deemed, as a matter of law, to be Mr. Mayhew's separate property. The circuit court then deducted $113,045.00 from the stocks' total valuation, erroneously stated by the circuit court as $457,824.00, leaving a balance of $344,779.00 as the stock's gross appreciated value.[8] As to the second step in its analysis, the circuit court determined that the gross appreciated value of the stock, in the sum of $344,779.00, was further divisible into active and passive appreciation. It was determined by the circuit court that $60,525.00 was active appreciation. The remaining balance of $284,254.00 was determined to be the result of passive appreciation. As such, the circuit court awarded to Mr. Mayhew, as his separate, nonmarital property, the full amount of

6. The stock was gifted on four different occasions: 8 shares were gifted on January 2, 1985; 2 shares were gifted on May 19, 1988; 7 shares were gifted January 4, 1989; and 7 shares were gifted on January 3, 1990.

7. The term "gross" is being used to refer to the appreciation in value of the 24 shares of stock without identifying whether the appreciation was active or passive.

8. As previously indicated, in *Mayhew I*, this Court held that the 24 shares of stock had a total value of $457,826.00. The circuit court, without explanation, used the figure $457,824.00 as the total value of the stocks. In footnote 43 of this

the passive appreciation. Ms. Mayhew was awarded one-half of the value of the stock's active appreciation calculated to be $30,262.50. This appeal resulted from those rulings.[9]

## II.

## STANDARD OF REVIEW

In the instant proceeding the circuit court adopted the recommended decision of the family law master. We have held that "[i]n reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review." Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

## III.

## DISCUSSION

### A. The Doctrine Of Active And Passive Appreciation

Ms. Mayhew invites this Court to adopt a "bright line" test or formula for determining active and passive appreciation involving closely-held corporations. Ms. Mayhew suggests that this Court adopt the following closely-held corporation formula:

opinion we have made the appropriate adjustment for the erroneous deduction of $2.00 by the circuit court. The parties and lower court were bound by the figure set out in *Mayhew I*. That figure could only be altered upon a rehearing of *Mayhew I* by this Court. A rehearing of *Mayhew I* did not occur. "The determination of an issue by an appellate court will be regarded as the law of the case upon a subsequent review unless there has been a material change in the record justifying a different ruling." Syl., *Reynolds v. Virginian Ry. Co.*, 117 W.Va. 359, 185 S.E. 568 (1936).

9. *See infra* Section III. D. for discussion of the issue of rehabilitative alimony.

When a spouse receives stock of a closely-held corporation as a gift and that spouse devotes all of his time and effort to the operation and management of the closely-held corporation and also derives most or all of the family income from said business, and when the non-titled spouse provides all the domestic and homemaker services for the family so the titled spouse can devote all his time to the operation of the closely-held corporation, then one hundred percent (100%) of the increase of the value of the stock during the years of marriage will be active appreciation subject to equitable distribution.

The formula suggested by Ms. Mayhew is both pragmatic and efficient. However, as we endeavor to explain, the doctrine of active and passive appreciation in West Virginia is defined and controlled by statute. It is because of such statutory constraints that we cannot and do not adopt Ms. Mayhew's "bright line" test.

In general, the doctrine of active and passive appreciation provides that any increase in the value of separate, nonmarital property acquired before or during marriage may be classified as either active, passive, or both. Any increase in the value of nonmarital property caused by marital contributions is deemed to be active appreciation and constitutes marital property. Any increase in the value of nonmarital property caused by nonmarital factors is deemed passive appreciation and constitutes separate property. *See* Brett R. Turner, *Equitable Distribution of Property* § 5.22, at 233 (1994).

The active and passive appreciation rule accurately reflects the marital partnership theory that supports our equitable distribution principles. That is, increased value resulting from spousal efforts becomes the property of the marital partnership. Whereas, increased value attributable to other sources remains separate property. *See* Deborah H. Bell, *Equitable Distribution: Implementing the Marital Partnership Theory Through the Dual Classification System,* 67 Miss. L.J. 115, 147–149 (1997). Professor Bell noted in her article that one of the most troubling issues involving the active and passive appreciation doctrine is finding a viable "method or formula for determining the portion of appreciation attributable to spousal efforts and the portion that resulted from third party or market forces." Id., 67 Miss. L.J. at 149.

Equitable distribution jurisdictions have rejected all efforts to make the "causation" determination for active and passive appreciation, be based exclusively upon a set formula. Instead, courts "uniformly apply a flexible, discretionary approach." Turner, *Equitable Distribution of Property* § 5.22, at 247.[10] The discretionary or fact-based approach used by courts in assessing causation in active and passive appreciation, reflects the belief that "there is no 'bright line' distinction between active and passive increases in value, and any attempt to create one is likely to do more harm than good." [11] Sally B. Sharp, *The Partnership Ideal: The Development of Equitable Distribution in North Carolina,* 65 N.C. L.Rev. 195, 233 (1987). While the fact-based approach is the preferred method in equitable distribution jurisdictions, the fact-based approach has been criticized as making "appreciation much harder to classify, increasing litigation costs and discouraging negotiated settle-

---

**10.** Community property jurisdictions determine causation, in the context of active and passive appreciation analysis, utilizing rigid formulas. Turner, *Equitable Distribution of Property* § 5.22, at 244–247.

**11.** The American Law Institute (ALI) has suggested (for use by equitable distribution jurisdictions) the following draft proposal as a formula-based determination of causation in the active and passive appreciation analysis:

The portion of the increase in value that is marital property ... is the difference between the actual amount by which the property has increased in value, and the amount by which capital of the same value would have increased over the same time period if invested in assets of relative safety requiring little management. Quoted in, Bell, *Equitable Distribution,* 67 Miss. L.J. at 154. The proposal by the ALI is simplistically seducing. Yet, there is one readily apparent problem with the formula: How do courts fairly determine an investment vehicle that requires little management? Resolving this question would no doubt require the creation of yet another formula.

ments." Turner, *Equitable Distribution of Property* § 5.22, at 247.[12]

■ Criticism of the fact-based approach to causation in the active and passive appreciation analysis is legitimate. In none of this Court's seminal opinions have we questioned applying the fact-based approach to causation in an active and passive appreciation analysis. *See Mayhew I; Smith v. Smith,* 197 W.Va. 505, 475 S.E.2d 881 (1996); *Shank v. Shank,* 182 W.Va. 271, 387 S.E.2d 325 (1989). The Court's silence is traced to the source of the definitions for active and passive appreciation in West Virginia. The definitions of active and passive appreciation are of statutory origin. These statutory definitions were first articulated by this Court in *Shank.* In syllabus point 1 of *Shank* we indicated that passive appreciation is defined by statute as follows:

> Passive appreciation of separate property of either of the parties to a marriage, or that increase "which is due to inflation or to a change in market value resulting from conditions outside the control of the parties," is separate property which is not subject to equitable distribution.[13]

We also noted in syllabus point 2 of *Shank* that active appreciation is defined by statute as follows:

> Active appreciation of separate property of either of the parties to a marriage, or that increase which "results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or

otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage" is marital property which is subject to equitable distribution.[14]

■ Although a formula-based approach may be the most efficient method of performing an active and passive appreciation analysis, such a formula must be articulated by the legislature. The statutory definitions for active and passive appreciation require a fact-based analysis when determining causation in an active and passive appreciation analysis. Indeed, Ms. Mayhew's suggested closely-held corporation formula nullifies the legislative requirement that any increase "which is due to inflation or to a change in market value resulting from conditions outside the control of the parties," is nonmarital property and therefore is not subject to equitable distribution.

## B. Re-examining The Burden Of Persuasion On A Claim For Appreciated Value Of Nonmarital Property

■ Before we proceed with our analysis of the substantive issues in this appeal, we are obligated to *sua sponte* revisit the dual burden of persuasion standard enunciated in *Mayhew I.*[15] We take this step because of the apparent difficulties the dual burden of persuasion standard caused the circuit court in evaluating the evidence presented on remand. In syllabus point 9 of *Mayhew I* we set out the following dual burden of persuasion standard:

---

12. Indeed, Ms. Mayhew's desire for this Court to adopt her proposed formula is recognition of the difficulties involved with the fact-based approach determining causation in an active and passive appreciation analysis.

13. *See also,* W. Va.Code § 48–2–1(f)(6) (1992).

14. *See also,* W. Va.Code § 48–2–1(e)(2) (1992).

15. As a general matter, the burden of proof consists of two components: burden of production and burden of persuasion. The burden of persuasion requires the party upon whom it is placed, to convince the trier of fact by a preponderance of the evidence on a given issue. When a party has the burden of persuasion on an issue, that burden does not shift. The burden of production merely requires a party to present some

evidence to rebut evidence proffered by the party having the burden of persuasion. The term burden of production is also used to refer to either party presenting some evidence on a matter. See e.g., Syl. Pt. 3, in part, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995) ("If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party"); *Crain v. Lightner,* 178 W.Va. 765, 769 n. 2, 364 S.E.2d 778, 782 n. 2 (1987) ("[A]n initial burden of production, which may shift to the nonmovant, and an ultimate burden of persuasion as to the nonexistence of a 'genuine issue,' which burden always remains on the movant").

The burden of persuasion is on the party asserting a right to the property, that is to say that the burden of persuasion with respect to characterizing the property as separate property is on the one claiming the property to be separate and the burden of persuasion with respect to characterizing the property as marital is on the party claiming the benefit of that result.

The burden of persuasion standard set out in *Mayhew I* was an extension of our holding in syllabus point 3 of *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1987), wherein we held that "[w]hen the issue in a divorce proceeding is the equitable distribution of marital property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property." [16] The obvious difference in *Mayhew I* and *Roig*, is that *Roig* addresses, in general terms, the "burden of presenting evidence," [17] while *Mayhew I* imposes a dual "burden of persuasion." Moreover, the most compelling distinction between the two decisions is that *Mayhew I* discussed the issue of valuing nonmarital property as active and passive appreciation, whereas the decision in *Roig* discussed the issue of correctly valuing pension assets.

Our decisions have previously recognized the placement of a burden of persuasion on both parties, with respect to different issues in a case. [18] For example, in syllabus point 4 of *Huber v. Huber*, 200 W.Va. 446, 490 S.E.2d 48 (1997) we set out the following shifting burden of persuasion:

> In a divorce proceeding a noninjured spouse who claims money from a tort settlement or verdict award as loss of consortium, must prove the same by a preponderance of the evidence. The injured spouse who claims money for noneconomic loss and post-divorce economic loss must prove the same by a preponderance of evidence. If either or both parties carry their burdens of proof, the money proven under such burdens shall be deemed separate property. To the extent that the parties do not provide sufficient evidence to make a reasonable allocation of all of the tort settlement or verdict award under their respective burdens, such balance shall be classified as marital property and divided accordingly.

In *Huber* it was necessary and pragmatic to allocate a burden of persuasion on both parties for several reasons. First, *Huber's* analysis involved quantifiable property that both spouses claimed to own as separate property. Second, both spouses had bona fide theories that, if proven, could allocate the property as separate property. Finally, to the extent that one or both spouses failed to meet their burden of persuasion, or if they met their burdens but property remained, the remaining property became marital property—subject to equitable distribution. Thus, *Huber* presented a factual setting that made it logically appropriate to have a shifting burden of persuasion.

The factual setting of *Huber* is different from that of *Mayhew I*. *Mayhew I* involves one spouse alleging that the increased value of separate property is active or marital property, whereas the other spouse claims that the increased value in nonmarital property is passive and therefore remains separate property. The *Mayhew I* fact pattern

---

**16.** The decision in *Mayhew I* actually relied upon *Miller v. Miller*, 189 W.Va. 126, 428 S.E.2d 547 (1993) (per curiam), wherein this Court quoted syllabus point 3 of *Roig*.

**17.** The "burden of presenting evidence" in *Roig* referred to the "production" of evidence. *Roig* did not create or imply a dual burden of persuasion standard. In fact, *Roig* clearly and unequivocally ruled that "[i]n all instances, the burden of proof is upon the spouse who would claim the gift." *Roig*, 178 W.Va. at 785, 364 S.E.2d at 798.

**18.** As a general matter, our cases have permitted the burden of persuasion to shift to the defendant when the defendant alleges an affirmative defense. *See, e.g., Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 479 S.E.2d 561 (1996) (undue hardship is an affirmative defense, upon which the defendant bears the burden of persuasion); *Voorhees v. Guyan Machinery Co.,* 191 W.Va. 450, 446 S.E.2d 672 (1994) (the defense of mitigation of damages is an affirmative defense in which the burden of persuasion lies upon the defendant); *State v. Daniel,* 182 W.Va. 643, 391 S.E.2d 90 (1990) (burden of persuasion may be imposed on a defendant asserting the affirmative defense of self-defense or accidental killing); *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) (burden of proof shifts to defendant on issue of contributory negligence).

reaches an absurd and illogical result, if both parties are given the burden of persuasion. For example, suppose the nonproperty owning spouse proves that 10% of the separate property's increase in value was the result of active appreciation and thus marital property. In contrast, the property owning spouse proves that 30% of the separate property's increase in value was the result of passive appreciation and thus remained separate property. This result means that 60% of the increase in value of the property belongs to no one. It cannot be marital property because the active appreciation value was proven to be 10%. Equally true, it cannot be separate property because the passive appreciation value was proven to be 30%.[19]

One can readily see that a dual burden of persuasion to prove active and passive appreciation is simply not functionable.[20] To the extent Syllabus point 9 of *Mayhew I* imposes a dual burden of persuasion to determine to what extent the increase in value of the separate, nonmarital property is active appreciation or passive appreciation, it is expressly overruled. We make this ruling mindful of the doctrine of stare decisis. "Stare decisis is the policy of the court to stand by precedent." *Banker v. Banker,* 196 W.Va. 535, 546 n. 13, 474 S.E.2d 465, 476 n. 13 (1996). However, "as a practical matter, a precedent-creating opinion that contains no extrinsic analysis of an important issue is more vulnerable to being overruled[.]" *State*

*v. Guthrie,* 194 W.Va. 657, 679 n. 28, 461 S.E.2d 163, 185 n. 28 (1995). *Mayhew I* simply does not provide a logical analysis to support its formulation of a dual burden of persuasion standard.[21] "Remaining true to an 'intrinsically sounder' doctrine ... better serves the values of stare decisis than would following a more recently decided case inconsistent with the decisions that came before it; the latter course would simply compound the recent error... In such a situation 'special justification' exists to depart from the recently decided case." *Adarand Constrs., Inc. v. Pena,* 515 U.S. 200, 231, 115 S.Ct. 2097, 2115, 132 L.Ed.2d 158 (1995). We simply cannot find any persuasive reasoning to continue with the precedent established in *Mayhew I.*

### *1. The analytical framework for conducting active and passive appreciation: a five-step test*

We must assign the burden of persuasion to one of the parties, having rejected a shifting burden of persuasion standard when segregating separate property into active and passive appreciation. To do so, we must first establish the general analytical framework within which the active and passive appreciation analysis occurs. This requires a five step test.

The first step involves determining whether the property, in general, is either separate[22] or marital proper

19. In the instant case, the circuit court overcame the situation presented by our hypothetical by utilizing an ad hoc and unacceptable methodology involving the arbitrary adding and averaging of both parties' evidence.

20. The rejection of a dual burden of persuasion must be clearly understood as applying only to *Mayhew I's* requirement that the nonproperty owner carry the burden of proof in establishing active appreciation and the property owner carry the burden of proof in establishing passive appreciation. This is the extent of our rejection of a dual burden of persuasion. As we illustrate later in this opinion, dual burdens of proof are imposed on the parties in active and passive appreciation analysis.

21. In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970), the United States Supreme Court enunciated three factors in stare decisis analysis which should be weighed prior to rejection of a

longstanding rule. These factors are: (1) the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; (2) the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and (3) the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments. Although the rule of law overruled in *Mayhew I* is not longstanding, we are confident that *Moragne's* principles are satisfied by our deviation from this short-lived precedent.

22. The definition of separate property is set out in W. Va.Code § 48–2–1(f) (1990) as follows:
 "Separate property" means:
 (1) Property acquired by a person before marriage; or
 (2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

ty.[23] This initial step requires no independent determination of active or passive appreciation. The burden of persuasion at the first step rests with the party claiming the property as separate, nonmarital property.[24] The second step in the analysis requires placing a value on the nonmarital property at the commencement of the action.[25] The burden of persuasion at the second step rests with the owner of the nonmarital property. The third step involves placing a value on the nonmarital property, before it became subject to any active or passive appreciation analysis.[26] The burden of persuasion at the third step rests with the owner of the nonmarital property.[27] The fourth step requires that the circuit court calculate the property's value at the commencement of the action, in relation to its value on the dates gifted.[28] That is, the court must make two distinct calculations to determine whether there was, in fact, any increase in value of the nonmarital property.[29] The fifth step in the analysis

**23.** W. Va.Code § 48–2–1(e) defines marital property as:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

**24.** In *Roig* we recognized the demise of the presumption of an interspousal gift of separate property and explained that the party asserting such a gift had the burden of persuasion:

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; and

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

[I]n keeping with the spirit of Code, 48–3–10 [1984], in order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift ... In all instances, the burden of proof is upon the spouse who would claim the gift.

*Roig*, 178 W.Va. at 785, 364 S.E.2d at 798. *See Barkley v. Barkley*, 119 Ohio App.3d 155, 694 N.E.2d 989, 998 (1997) (party seeking to have property deemed nonmarital bears the burden of persuasion); *In re Marriage of Troffo*, 151 Or. App..741, 951 P.2d 197, 200 (1997) (party claiming property as nonmarital has burden of persuasion); *In re Marriage of Hegge*, 285 Ill.App.3d 138, 220 Ill Dec. 853, 674 N.E.2d 124, 126 (1996) (party claiming that the property is nonmarital has the burden of persuasion); *Stevenson v. Stevenson*, 612 A.2d 852, 854 (Me.1992) (the party claiming that a piece of property is nonmarital bears the burden of persuasion at issue); *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220, 225 (1988) (burden of persuasion to show the property is nonmarital property is on the person making the claim).

**25.** We have previously held that the "value of ... marital property, ordinarily [is] the date of the commencement of the action ." *Whiting v. Whiting*, 183 W.Va. 451, 455, 396 S.E.2d 413, 417 (1990).

**26.** The critical determination that must be made at this step involves the date for valuing the property as separate property. If the separate property was acquired during the marriage, the date of such acquisition is the valuation date. If the separate property was acquired before the marriage, the parties' wedding date becomes the valuation date.

**27.** *See Williams v. Williams*, 645 A.2d 1118, 1121 (Me.1994). *But see, Pulice v. Pulice*, 242 A.D.2d 527, 661 N.Y.S.2d 675 (1997) (placing the burden on the non-owning spouse).

**28.** No burden of persuasion is involved in the actual calculation process of the fourth step of our test.

**29.** If there was no increase in value the analysis terminates. *See Nowik v. Nowik*, 228 A.D.2d 421,

requires a determination as to what extent the increase in value of the nonmarital property is active appreciation or passive appreciation. The burden of persuasion at the fifth step is discussed separately below.

## 2. The burden of persuasion: Valuing the active and passive appreciation of separate, nonmarital property

The fifth step in the active and passive appreciation analysis requires the actual segregation of separate, nonmarital property into active and passive appreciation. We have already determined *Mayhew I's* shifting burden of persuasion standard to be unworkable. Thus, the burden of persuasion must rest on the party claiming active appreciation or on the party claiming passive appreciation, but not on both parties. An examination of other equitable distribution jurisdictions that have addressed the burden of persuasion issue, in the context of the active and passive appreciation analysis, reveal several distinct approaches. A few jurisdictions hold that the party claiming passive appreciation has the burden of persuasion. *See In re Marriage of Weiler*, 258 Ill.App.3d 454, 196 Ill. Dec. 372, 629 N.E.2d 1216, 1221 (1994). *Adkins v. Adkins*, 650 So.2d 61, 68 (Fla.App. 1994); *Williams v. Williams*, 645 A.2d 1118, 1121 (Me.1994); *Berenberg v. Berenberg*, 474 N.W.2d 843, 846 (Minn.App.1991). One jurisdiction requires, by statute, that the spouse claiming active appreciation show that contributions of marital property or personal effort were made to the separate property, before the burden of persuasion shifts to the party claiming passive appreciation. *Decker v. Decker*, 17 Va.App. 12, 435 S.E.2d 407, 410–411 (1993). By statute in another jurisdiction the burden of persuasion is placed on both parties. Under the statute, if both parties meet their burdens any increase in the value of the property is deemed separate. *Ciobanu v. Ciobanu*, 104 N.C.App. 461, 409 S.E.2d 749, 752 (1991). A majority of jurisdictions place the burden of persuasion on

the party claiming active appreciation. *See Connealy v. Connealy*, 7 Neb.App. 117, 578 N.W.2d 912, 915 (1998); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 746 (Tenn.App.1996); *Thielenhaus v. Thielenhaus*, 890 P.2d 925, 931 (Okl.1995); *Elmaleh v. Elmaleh*, 184 A.D.2d 544, 584 N.Y.S.2d 857, 858 (1992); *Schneider v. Schneider*, 824 S.W.2d 942, 946 (Mo.App.1992); *Popp v. Popp*, 146 Wis.2d 778, 432 N.W.2d 600, 605 n. 3 (1988); *Brooks v. Brooks*, 733 P.2d 1044, 1054 (Alaska 1987).

One commentator, reviewing West Virginia's equitable distribution laws, has suggested that "all increase in separate property should be classed as marital unless the separate property owner sustains the burden of showing that the increase is due to market conditions beyond the control of the parties." Joan M. Krauskopf, *Classifying Marital and Separate Property—Combinations and Increase in Value of Separate Property*, 89 W. Va. L.Rev. 997, 1022 (1987). In other words, Professor Krauskopf argues that in West Virginia the burden of persuasion should be placed on the party claiming passive appreciation. We disagree.

Logic and fairness dictate that, in West Virginia, the burden of persuasion on the issue of the increase in value of separate property should be upon the party claiming its active appreciation. It must be remembered that W. Va.Code § 48–2–1(e)(1) "expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syl. Pt. 3, in part, *Whiting v. Whiting, supra.* In order to take property out of the preferred marital property characterization, the party claiming property as separate has the burden of persuasion. *See Roig*, 178 W.Va. at 785, 364 S.E.2d at 798 ("In all instances, the burden of proof is upon the spouse who would claim the gift"). It does not appear to be irrefutably logical to impose a party with the burden of persuasion in establishing property as separate and, after so doing, to continue this burden on the separate property owner

643 N.Y.S.2d 223 (1996) (no evidence of appreciation in value of separate stock shown); *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn.App.1996) (property actually decreased in value); *Reich v. Reich*, 652 So.2d 1200 (Fla.App.1995) (holding that it was error to find active appreciation with-

out first making a finding that property actually appreciated in value); *Knapp v. Knapp*, 874 S.W.2d 520 (Mo.App.1994) (no increase in value of property); *In re Marriage of Hulse*, 727 P.2d 876 (Colo.App.1986) (no increase in value shown).

merely because the non-owner claims active appreciation. Logic and fairness dictate that once a party has shown by a preponderance of the evidence that property is separate, the burden of persuasion then should fall on the non-owning party to show that some or all of the appreciation in value of the property is the result of active appreciation. *See generally, McCulloch v. McCulloch*, 435 N.W.2d 564, 568 (Minn.App.1989) (holding that after a spouse establishes initially that an asset is nonmarital, the other spouse asserting that the nonmarital asset was given by gift to the marital estate, so as to become marital property, has the burden of persuasion). Therefore, when determining to what extent the increase in value of separate, nonmarital property is active appreciation, the burden of persuasion is upon the party asserting a claim of active appreciation.[30]

### 3. Summation of the analytical framework for conducting the active and passive appreciation analysis

 Based upon the foregoing discussion, we hold the party seeking to exclude property from the marital estate that is presumptively marital property, has the burden of persuasion on that issue. The party seeking to have the increase in value, if any, of the separate, nonmarital property deemed to be marital as a result of active appreciation, has the burden of persuasion on that issue.

 We further hold that the formula for an active or passive appreciation analysis requires a determination of the following five-step test: (1) whether the property, in general, is either separate or marital proper-

ty; (2) placing a value on the nonmarital property at the commencement of the action; (3) the value of the nonmarital property, before it became subject to the active and passive appreciation analysis; (4) the circuit court calculation of the property's value at the commencement of the action, in relation to its value on the date(s) gifted; and (5) a determination as to what extent the increase in the value of the nonmarital property is active appreciation or passive appreciation. The resulting amount due to active appreciation is marital property and subject to equitable distribution.

### C. Application Of The Active And Passive Appreciation Five Step Test

#### 1. Step one and step two

Our task now is to review the circuit court's order by utilizing the active and passive appreciation framework heretofore outlined. Application of this new burden of persuasion to the instant proceeding is not prejudicial, because both parties had previously been given the burden of persuasion on each of the relevant elements of the test. *See Kornberg v. Kornberg*, 542 N.W.2d 379, 387 n. 3 (Minn.1996) (holding that application of an incorrect standard of proof by the lower court only requires reversal if the error prejudices the other party).

In the instant proceeding the first and second steps of our analysis were actually performed in *Mayhew I*. We held in *Mayhew I* that Mr. Mayhew had established that the 24 shares of stock gifted to him were his separate, nonmarital property.[31] It was also

---

**30.** The party claiming active appreciation in nonmarital property may carry his or her burden of persuasion by presenting evidence on the issue of active appreciation. There is no obligation on such party to present independent evidence of passive appreciation. The obvious reason for this is that whatever amount the party fails to prove is active appreciation is axiomatically passive appreciation. The opposing party may present independent evidence of passive appreciation or merely challenge the reliability of the evidence presented to prove active appreciation.

**31.** In affirming the circuit court's ruling that the 24 shares of stock were nonmarital property, we indicated the following in *Mayhew I* regarding the evidence on this issue:

In reviewing the evidence relating to the ownership of the twenty-four shares of Mayhew Chevrolet–Oldsmobile, Inc., stock in issue under this assignment of error, the Court notes that Robert E. Mayhew adduced evidence showing that those twenty-four shares were gifts from his father. Nancy E. Mayhew took issue with this and claimed that, although they outwardly appeared to be gifts, Robert E. Mayhew received a low salary while working for his father and that the salary was actually reduced shortly after he received his last gift of shares. Robert E. Mayhew countered this by introducing evidence suggesting that his brother had received gifts of other property at the same time he received gifts of stock. He also introduced evidence indicating that his salary

determined in *Mayhew I* that the 24 shares of stock had a value of $457,826.00.[32]

## 2. Step Three: Valuation of the stock at the dates gifted

The third step of our active and passive appreciation analysis involves placing a value on the 24 shares of stock at the various dates on which they were gifted to Mr. Mayhew. The burden of persuasion at step three rests with Mr. Mayhew.

The stock was gifted to Mr. Mayhew on four different occasions: 8 shares on January 2, 1985; 2 shares on May 19, 1988; 7 shares on January 4, 1989; and 7 shares on January 3, 1990.[33] Mr. Mayhew introduced evidence through his expert witness that the total value of the 24 shares of stock on the dates gifted was $101,816.57. In contrast, Ms. Mayhew's expert witness testified that the total value of the 24 shares of stock on the dates gifted was $124,275.00. Rejecting both experts, the circuit court decided to average the two proffered figures and valued the 24 shares of stock on the dates gifted at $113,045.00. The circuit court gave no justification for its decision to average the two dis-

puted figures. By this Court's placement of the burden of persuasion solely upon Mr. Mayhew at this step, we do not approve of the circuit court's decision to average the two figures.[34] However, neither party assigned as error the circuit court's resolution of this issue. Therefore, we will not disturb the circuit court's finding on this matter.[35]

## 3. Step Four: Calculation of the stock's value at commencement of the action in relation to its value on each date gifted

██ The fourth step requires calculating the stock's value at the commencement of the action,[36] in relation to its value on the dates gifted. This step requires the circuit court to subtract $113,045.00 (value on dates gifted) from $457,826.00 (value at commencement of action). The circuit court performed the calculation and concluded that the stock had appreciated in value by the amount of $344,779.00.[37] We find no basis to disturb the circuit court's finding that the 24 shares of stock had, in fact, appreciated in value in the amount of $344,799.00.

---

was reduced, as was his father's salary at the same time, due to the fact that the corporation had suffered severe losses from a devastating fire and needed to restore its financial standing. *Mayhew I*, 197 W.Va. at 298, 475 S.E.2d at 390.

**32.** We further indicated in *Mayhew I*:

It appears that there was extensive evidence on the value of the shares presented by expert evaluators of such property, that such expert evaluators used appropriate methods for valuing the property, and that the family law master resolved the conflict in the evidence in that regard properly and valued the shares in a manner consistent with the evidence of value advanced by the evaluators. This Court cannot conclude that the findings of fact made by the family law master and the circuit court as to the value of the shares were clearly wrong. Accordingly, ... the circuit court's ruling is affirmed. *Mayhew I*, 197 W.Va. at 298, 475 S.E.2d at 390.

**33.** This Court actually determined the dates on which the stock was gifted in *Mayhew I. See Mayhew I*, 197 W.Va. at 294–295, 475 S.E.2d at 386–387.

**34.** When a lower court undertakes active and passive appreciation analysis it should only resort to averaging, when the methodologies used by both parties in arriving at their respective

results are significantly flawed. The order of a lower court must specifically set out the significant flaws found by the lower court.

**35.** Mr. Mayhew's brief does pick up this issue, but it does so in the context of arguing a specific enumerated assignment of error. In *State, Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), we pointed out that "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim ... Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted).

**36.** The opinion in *Mayhew I* established the total value of the 24 shares of stock. It does not appear that *Mayhew I* used the commencement date of this action, as the point at which to calculate the total value of the 24 shares of stock. The opinion fails to state the basis for departing from the commencement date of the action. However, we are bound by the date affirmed in that opinion, since no rehearing was granted to reconsider the valuation date.

**37.** The increase in value is actually $344,781.00. As we pointed out elsewhere in this opinion, the circuit court erroneously used the figure of $457,824.00. We will continue to use the figures relied upon by the circuit court until we definitively determine the active and passive appreciation calculation.

#### 4. Step Five: Separating the active and passive appreciation

The fifth step involves determining what portion of the increase should be allocated as active and/or passive appreciation. The burden of persuasion is on Ms. Mayhew. The evidence presented by Ms. Mayhew may be divided into three parts: (a) additional compensation, (b) dividends, and (c) extraordinary work efforts.[38] We review the evidence below.

**(a) Additional compensation.** Ms. Mayhew presented evidence of additional compensation that Mr. Mayhew should have received for approximately a two year period after he obtained control of the corporation. The compensation argument and evidence presented by Ms. Mayhew involved his earned, but unpaid salary. As is set out in W. Va.Code § 48–2–1(e)(1), marital property means "earnings acquired by either spouse during a marriage[.]"[39] Ms. Mayhew argues that retention by the corporation of Mr. May-hew's salary constituted the active appreciation of separate property. Courts have held that retained salary or dividends may be deemed active appreciation of nonmarital stock where evidence shows "that the corporate owner-spouse had the power to influence the compensation paid and that the owner-spouse received inadequate compensation." *Watkins v. Watkins,* 924 S.W.2d 542, 545 (Mo.App.1996) (citation omitted).

Ms. Mayhew's evidence revealed that Mr. Mayhew had unearned income of $147,000.00 for the two year period after he obtained control of the corporation. The circuit court accepted Ms. Mayhew's evidence on this issue. However, the circuit court reduced the unearned income amount by one-half to reflect "the tax consequences and the anticipated consumption of the proceeds by the parties[.]" Ms. Mayhew contends on appeal that there was no justification for such a reduction, and the circuit court took this action sua sponte.[40] Moreover, it appears that the deci-

38. Ms. Mayhew also presented evidence below concerning the assumption of debt by Mr. Mayhew that should have been assumed by the corporation, and valuation of the 24 shares of stock based upon General Motors' stock. The circuit court rejected the evidence on both issues and Ms. Mayhew does not raise them on appeal. The brief of Mr. Mayhew points out that Ms. Mayhew's expert was wrong in comparing General Motors' stock with his closely-held corporation. We agree with Mr. Mayhew and the circuit court agreed with Mr. Mayhew. This Court held in *Mayhew I* that "evidence can be developed regarding the performance of this business relative to others of similar size, character and circumstances which will aid the court." *Mayhew,* 197 W.Va. at 303, 475 S.E.2d at 395. Clearly, the stock in Mr. Mayhew's closely-held corporation cannot be compared to that of the publicly traded stock of General Motors. In the final analysis, however, this issue is moot insofar as the evidence was rejected by the circuit court as it did not impact in anyway upon the other arguments and evidence presented by Ms. Mayhew.

39. The term "earnings" is defined by W. Va.Code § 48–2–1(c) to mean "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."

40. For reasons not explained in Mr. Mayhew's brief, it appears that his expert decided to present evidence on the issue of active and passive appreciation by challenging numbers affirmed in *Mayhew I* and proceeding therefrom. In *May-hew I* this Court determined that the parties owned 10 shares of the corporation's stock as marital property. The 10 shares were valued at $190,760.00. We also determined in *Mayhew I* that Mr. Mayhew owned 24 shares of the corporation's stock as separate property—subject to active and passive appreciation analysis. The 24 shares were valued at 457,826.00. The total value of the 34 shares was established in *Mayhew I* as $648,586.00. On remand, Mr. Mayhew's expert challenged the total valuation of the 34 shares of stock. Mr. Mayhew's expert concluded that the total value of the 34 shares of stock was $601,960.05. The expert then proceeded to present mathematical evidence based upon the figure of $601,960.05. Obviously, this Court's determination in *Mayhew I* that the 34 shares of stock had a value of $648,586.00 could not be challenged on remand. It was a conclusive fact. Accordingly, the circuit court disregarded much of the evidence presented by Mr. Mayhew's expert, but managed to utilize some figures to challenge and reduce numbers posited by Ms. Mayhew's expert. We believe that it was error for the circuit court to utilize any of the numbers or formulas tendered by Mr. Mayhew's expert as they were generated on an incorrect foundation, i.e., the figure of $601,960.05.

Mr. Mayhew's brief in this appeal has attempted to both, distance itself from his expert's misguided calculations and selectively embrace some of his expert's calculations. The result of such efforts culminated in legal arguments and recalculations that were not presented to nor ruled upon by the circuit court or family law

sion to reduce the figure by one-half was arbitrary and void of any findings to support the reduction. We believe that the evidence supported the circuit court's finding that Mr. Mayhew could have paid himself an additional $147,000.00. We further conclude that the circuit court was clearly erroneous in reducing the additional compensation evidence by one-half.

■ **(b) Dividends.** Ms. Mayhew argued that Mr. Mayhew earned $62,076.00 as dividends for the period 1985 through 1993. It has been correctly held that "[d]ividends from non-marital property received during the coverture are marital property." *In re Marriage of Perkel,* 963 S.W.2d 445, 450 (Mo.App.1998).[41] It has also been held that reinvestment of dividend income does not terminate its status as marital property.[42] *See Harriman v. Harriman,* 710 A.2d 923, 925 (Me.1998); *Fowler v. Fowler,* 158 Wis.2d 508, 463 N.W.2d 370, 373 (App.1990). Moreover, as we have previously indicated, courts have held that retained dividends may be deemed active appreciation. In order for Ms. Mayhew to establish her right to share in the retained dividends she had to prove that Mr. Mayhew had the power to influence the payment of earned dividends. *See Watkins v. Watkins, supra.*

The circuit court found that Ms. Mayhew's evidence established that Mr. Mayhew had the power to pay earned dividends only for the years 1992 and 1993. The dividends earned for the years 1992 and 1993 totaled $29,603.00. Ms. Mayhew contends on appeal that the circuit court erred by failing to conclude that Mr. Mayhew was entitled to receive dividends for the full period covering 1985 through 1993. We disagree. Ms. Mayhew's evidence did not establish that Mr. Mayhew had the power to pay himself dividends for the period 1985 through 1991. Mr. Mayhew became the principal owner and controller of Mayhew Chevrolet–Oldsmobile,

Inc. during the period 1992–93. Therefore, only during the years 1992 and 1993, did Mr. Mayhew have the authority to influence the payment of those dividends.

After the circuit court found that Ms. Mayhew had established that Mr. Mayhew increased the value of his nonmarital stock by retaining dividends in the amount of $29,-603.00, the circuit court again reduced the amount by one-half to reflect "the tax consequences and the anticipated consumption of the proceeds by the parties[.]" Ms. Mayhew contends on appeal that there was no justification for such a reduction. For the reasons set fourth in Section III, Part C, § 4(a)., *supra,* we agree with Ms. Mayhew and find that the circuit court's reduction of the proven retained dividends, was clearly erroneous.

■ **(c) Extraordinary work efforts.** Finally, Ms. Mayhew contends that the circuit court erred by refusing to rule that the stock increased in value because of the extraordinary time and effort spent at the corporation by Mr. Mayhew. Ms. Mayhew also contended that she assisted in increasing the stock's value due to her work efforts both at home and in the community, as well as the sacrifices she made because of the time Mr. Mayhew was away from home. Ms. Mayhew presented evidence that the extraordinary work efforts increased the stock's value by $90,000.00 and thus constituted active appreciation.

This Court recognized Ms. Mayhew's theory of extraordinary work efforts in syllabus point 4 of *Smith v. Smith:*

> Participation as an officer or director of a corporation together with significant stock ownership by a spouse constitutes sufficient participation to qualify, at least to some degree, as active appreciation for purposes of equitable distribution. When these factors are coupled with full-time work activity by the spouse for the corpo-

---

master. This Court has consistently held that we will not, as general rule, pass upon issues raised for the first time on appeal. *See Koffler v. City of Huntington,* 196 W.Va. 202, 207 n. 6, 469 S.E.2d 645, 649–650 n. 6 (1996). We apply this rule to Mr. Mayhew's assignments of error on the issue of active and passive appreciation of the 24 shares of stock.

**41.** Additionally, interest earned on nonmarital property has been held to constitute marital property. *Reed v. Reed,* 24 Ark.App. 85, 749 S.W.2d 335, 338 (1988).

**42.** In *Smith,* 197 W.Va. at 512–513, 475 S.E.2d at 888–889 we declined to address this issue.

ration, some degree of active participation must be assessed.

The circuit court rejected the evidence on this issue as "mere speculation not justified by any accounting principles as testified by the witnesses." We find that the circuit court committed error in rejecting evidence concerning extraordinary work efforts.[43] We understand the circuit court's rejection of this evidence to be based upon its "speculative" nature. However, implicit in this Court's recognition of extraordinary work effort is the determination to permit "expert" testimony as to the likely value to be attached to extraordinary work effort. Ms. Mayhew presented such expert testimony. Ms. Mayhew's expert calculated that the extraordinary work effort in this case amounted to $90,000.00. We discern no basis to reject or reduce that amount. In addressing the issue of expert testimony under Rule 702 of the West Virginia Rules of Evidence in *Gentry v. Mangum*, 195 W.Va. 512, 524, 466 S.E.2d 171, 183 (1995), this Court noted that "Rule 702 has three major requirements: (1) the witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact." We find *Gentry's* criteria to have been met by Ms. Mayhew's expert.

### 4. Income, dividends and work efforts

■ The circuit court committed error in reducing, by one-half, Mr. Mayhew's retained earning of $147,000.00 and dividends in the amount of $29,603.00. There was also error committed by the circuit court in rejecting Ms. Mayhew's expert evidence that the value of the stock increased by $90,000.00 due to the extraordinary work efforts of Mr. and Mrs. Mayhew. We find that the total active appreciation was proven to be $266,603.00. Based upon the analysis set forth in this opinion, Ms. Mayhew is entitled to one-half of $266,603.00 or $133,301.50, as her equitable distribution of the stock's active appreciation.

### D. Rehabilitative Alimony

■ The decision in *Mayhew I* remanded the issue of rehabilitative alimony to the circuit court. Unfortunately, *Mayhew I* did not provide guidance as to what the circuit court should reconsider regarding rehabilitative alimony. The family law master's recommended order stated "[t]hat there shall be no adjustment to the amount of alimony awarded to the Plaintiff, but the alimony shall extend beyond the death of the Defendant." The circuit court's final order stated that "[n]either party argued that alimony should not extend beyond the death of the Payor, so the Court will not address that issue." Thus, the record is clear that the issue of rehabilitative alimony was not argued before the circuit court. Mr. Mayhew attempts now to resurrect the issue before this Court. We decline to address the issue. Our law is clear in holding that, as a general rule, we will not pass upon an issue raised for the first time on appeal. *See Koffler v. City*

43. In her dissenting opinion in *Mayhew I*, Justice Workman captured the essence of the extraordinary work efforts issue in this case:

In order to fully appreciate the extent of [Ms. Mayhew's] marital efforts in aiding [Mr. Mayhew] in his work at the dealership, it is helpful to examine these facts: During the parties' marriage, [Mr. Mayhew] worked at the car dealership every day from early in the morning until 7:00 p.m. or 8:00 p.m. at night. In addition, he worked every Saturday until at least 3:00 p.m. or 4:00 p.m. [Ms. Mayhew] would often prepare [Mr. Mayhew's] dinner and take it, together with their two daughters, to the dealership so they would have an opportunity to visit with their father for a short period of time during the weekdays, and so that he (as well as other employees on some occasions) could have dinner without interrupting their work. [Mr. Mayhew] also was very active in community organizations as an aid to his business and [Ms. Mayhew] assisted in that respect as well. [Ms. Mayhew] helped her husband directly in many ways in the business, including actually working there without compensation before the children were born. On weekends, the family participated in social or civic activities for the purpose of becoming more visible in the community to increase the sale of new and used cars from the dealership. The wife did virtually all the household/child care duties, including mowing six-plus acres and tending to sheep, cattle, chickens and other farm animals. It is impossible not to conclude that the wife's efforts doing virtually all of the domestic work in this marriage, as well as the other efforts she made not only to work directly for the business but also to free her husband up to work in the business, helped this business appreciate.

*Mayhew I*, 197 W.Va. at 309–310, 475 S.E.2d at 401–401 (Workman, J., dissenting).

*of Huntington,* 196 W.Va. 202, 207 n. 6, 469 S.E.2d 645, 649–650 n. 6 (1996).

cuit court. Therefore, we decline to address the issue on appeal.

Reversed and Remanded with Instructions.

### IV.

### CONCLUSION

For the reasons set forth herein, we find that Ms. Mayhew proved the active appreciation of Mr. Mayhew's stock to be $266,603.00. She is therefore entitled to $133,301.50 as her portion of the marital property.[44] We further conclude that the issue of rehabilitative alimony was not argued before the cir-

---

**44.** We indicated elsewhere in this opinion that the circuit court erroneously found that the total value of the 24 shares of stock was $457,824.00, when *Mayhew I* identified the figure at $457,-826.00. On remand the circuit court's order should reflect that from the total value of the stock in the amount of $457,826.00, Ms. Mayhew is entitled to $133,301.50 and Mr. Mayhew is entitled to $324,524.50.