IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SHAWN H.,**
**Petitioner Below, Petitioner**

**FILED**
**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-95**      (Fam. Ct. Preston Cnty. No. FC-39-2023-D-103)

**ELISE H.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Shawn H.[1] appeals the Family Court of Preston County's final divorce order entered on February 7, 2024, awarding Respondent Elise H. a share of the passive appreciation of the parties' marital home. Elise H. filed a response that included one cross assignment of error, asserting that the family court erroneously held that the marital home was Shawn H.'s premarital asset.[2] Shawn H. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is affirmed, in part, and remanded, in part to the family court with directions as set forth herein.

The subject of this appeal is the equitable distribution of the parties' marital home. The home was purchased and titled in Shawn H.'s ("Husband") name on October 19, 2017, for $120,000. At the time of this purchase, the parties were not married but were cohabitating. Husband made a $6,000 down payment and the remaining $114,000 was secured by a mortgage. Husband proposed marriage to Elise H. ("Wife") in February of 2018. Husband and Wife were married on September 28, 2019, after cohabitating in the home for twenty-two months. For most of this twenty-two-month period, Wife paid

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Shawn H. is represented by John R. Angotti, Esq. Elise H. is represented by Amber Urtso Sellaro, Esq.

approximately one-half of the mortgage and utilities. The parties share one child, born in 2021.

The parties separated on May 10, 2023. The final divorce hearing was held on February 6, 2024. At the hearing, Wife argued that the home was purchased in anticipation of marriage. In support of her argument, she presented texts and pictures showing that she actively participated in the home search and attended the closing. Husband, in contrast, argued that Wife was shocked when he proposed marriage and that there was no anticipation of marriage when the home was purchased. The family court found Wife's testimony more credible on this issue.

Regarding the twenty-two-month cohabitation period, Husband argued below that he should be the sole beneficiary of the equity that accumulated during that time. Wife, on the other hand, argued that she was entitled to one-half of the equity (minus the $6,000 down payment made by Husband) that accumulated during that time. Regarding the timeframe during which the parties were married, Husband argued below that Wife's marital portion of equitable distribution should only include half of the reduction of principal and that the home's equity and/or passive appreciation should not be considered marital property.

The family court entered its final order on February 7, 2024, holding the following: (1) Wife had no claim to the twenty-two months of payments made during cohabitation; (2) Wife had a claim to the forty-four months of payments made during marriage because marital funds were used; (4) the parties agreed that the marital home was worth $211,000; and (5) at the time of separation the parties owed $101,897 on the home.[3] The home was awarded to Husband, which means he received $63,354 in equitable distribution. Based on the family court's calculations, Wife was ordered to receive $31,054 from Husband as her share of equitable distribution. It is from the February 7, 2024, order that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of
> Appeals of West Virginia, the Intermediate Court of Appeals shall review
> the findings of fact made by the family court for clear error, and the family

---

[3] In calculating Wife's share of equitable distribution of the home, the family court did the following: (1) by subtracting the home's worth and the amount owed, the home had $109,103 in equity; (2) the parties paid on the home while married for forty-four months at $613.98 per month, which totaled $27,015; (3) the total paid on the home overall was $46,523; and, (4) to calculate the marital portion of equity the family court used the following formula $27,015 \div \$46,523 \times \$109,103 = \$63,354$.

court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Husband raises two assignments of error. First, he asserts that the family court erred when it awarded Wife an interest in the passive appreciation of the marital home based on the fact that marital funds were used to pay the mortgage on the property during the parties' marriage.[4] We disagree. West Virginia Code § 48-1-233 (2001) defines marital property as:

> (1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of coownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property does not include separate property as defined in section 1-238; and
>
> (2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

By contrast, West Virginia Code § 48-1-237 (2001) defines separate property as:

> (1) Property acquired by a person before marriage;
> (2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;
> (3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;

---

[4] Passive appreciation is defined as increase "which is due to inflation or to a change in market value resulting from conditions outside the control of the parties." *Mayhew v. Mayhew*, 205 W. Va. 490, 497, 519 S.E.2d 188, 195 (1999) (quoting Syl. Pt.1, *Shank v. Shank*, 182 W. Va. 271, 387 S.E.2d 325 (1989)).

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;
(5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or
(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

Most relevant to this assignment of error is West Virginia Code § 48-1-233(2)(A), which defines marital property as "[a]n expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property." It is undisputed that marital funds were used to reduce the mortgage balance in this case. Therefore, the family court did not err when it ruled that Wife was entitled to an interest in the marital portion of Husband's home. We also note that "West Virginia case law generally indicates a marked preference for characterizing the property of married persons as marital." *Richardson v. Richardson*, No. 19-0862, 2020 WL 7222720, at *3 (W. Va. Dec. 7, 2020) (memorandum decision). *See also* Syl. Pt. 2, *Kapfer v. Kapfer*, 187 W. Va. 396, 419 S.E.2d 464 (1992) (per curiam) ("W. Va. Code § 48-2-1(e)(1) (1986) . . . expresses a marked preference for characterizing the property of the parties to a divorce action as marital property."), quoting Syl. Pt. 3, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990). *See also Mayhew v. Mayhew*, 205 W. Va. 490, 496, 519 S.E.2d 188, 194 (1999) (stating that the increased value resulting from spousal efforts becomes the property of the marital partnership).

As his second assignment of error, Husband contends that the family court's award of passive appreciation to Wife was erroneous insofar as the formula utilized awarded Wife an interest in the property's fair market value increase from prior to the marriage and failed to account for the increase in value from the purchase date through the date of marriage. Upon review of the final order, we conclude that it lacks sufficient findings of fact and conclusions of law in order to facilitate a meaningful appellate review for this issue. The Supreme Court of Appeals of West Virginia has provided guidance on how to calculate active and passive appreciation in *Mayhew*, as follows:

We further hold that the formula for an active or passive appreciation analysis requires a determination of the following five-step test: (1) whether the property, in general, is either separate or marital property; (2) placing a value on the nonmarital property at the commencement of the action; (3) the value of the nonmarital property, before it became subject to the active and passive appreciation analysis; (4) the [family court] calculation of the property's value at the commencement of the action, in relation to its value on the date(s) gifted; and (5) a determination as to what extent the increase in the value of the nonmarital property is active appreciation or passive

4

appreciation. The resulting amount due to active appreciation is marital property and subject to equitable distribution.

*Id*. at 502, 519 S.E.2d at 200. In the instant case, the family court failed to engage in the five-step analysis explained above in *Mayhew*. *See generally* W. Va. Code § 48-7-106 (2001) ("In any order which . . . determines the ownership . . . of any property, . . . the court shall set out in detail its findings of fact and conclusions of law . . ."). Accordingly, we remand on Husband's second assignment of error for further proceedings consistent with this decision so that it may analyze the evidence in relation to the five *Mayhew* steps and the applicable burdens of proof as discussed in *Mayhew*.

In her response brief, Wife included one cross assignment of error. She asserts that the family court erroneously rejected her argument that the home was purchased in contemplation of marriage and should be categorized as a marital asset rather than a pre-marital asset belonging to Husband. In support of her argument, Wife cites *Hinerman v. Hinerman*, 194 W. Va. 256, 460 S.E.2d 71 (1995), which also involved a couple that searched for a home together prior to their marriage. Upon their purchase of the home, it was solely deeded in the husband's name, and wife's name was never added. However, *Hinerman* dealt with a unique set of facts, whereby the husband indicated that he had planned to include the wife's name on the deed but neglected to do so after a lengthy marriage. Additionally, in *Hinerman*, the parties married approximately one month after they purchased the home. Here, the parties did not marry for approximately twenty-two months and Husband gave no indication that he ever planned to add Wife's name to the home. Therefore, we conclude that the family court did not abuse its discretion in rejecting Wife's *Hinerman* argument. *See also* West Virginia Code § 48-7-111 (2001) which states, "[a] court may not [. . .] order equitable distribution of property between individuals who are not married to one another. . . ."

Accordingly, we affirm the family court's ruling as to Husband's first assignment of error and Wife's cross assignment of error. We remand to the family court for further analysis regarding Husband's second assignment of error.

Affirmed, in part, and Remanded, in part.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

5