# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Rodgers W. Harshbarger, Jr.,**
**Petitioner Below, Petitioner**

**FILED**

November 8, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0173** (Kanawha County 08-D-729)

**Fawney Sue Harshbarger,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rodgers W. Harshbarger, by counsel Ancil G. Ramey and Gregory E. Elliott, appeals the "Order" entered by the Circuit Court of Kanawha County on January 10, 2013, affirming the final divorce order from the family court. Respondent Fawney Sue Harshbarger, by counsel Allyson Griffith, filed her response to which petitioner filed a reply. Petitioner asks that the family court order be set aside and that the matter be remanded with instructions regarding the values of certain items and accounts and the adjustment of the distribution.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The couple was married for thirteen years but had no children together. The wife filed a petition for divorce alleging irreconcilable differences in April of 2008. That petition was granted by the Family Court of Kanawha County by order entered November 29, 2012. In that order, the family court found as follows: The couple had been separated since approximately October 1, 2007. The husband's net average income for the years 2006 through 2008 was $11,969.67 per month. The husband admitted that he had not filed his 2009 and 2010 tax returns. The wife's net income for 2011 was $3,054.48 per month. The wife testified that due to the duration of the divorce and her monthly needs, she had taken out a line of credit, used credit cards, and taken loans against her life insurance policies to assist with her living expenses and attorney's and expert's fees. She also testified that prior to and during the marriage the husband never "had a problem with where [the wife] worked, how many hours [the wife] worked or how much [the wife] earned." Given that the husband is a dentist and the wife a dental hygienist, the family court determined the husband's income earning ability far exceeds that of the wife's. The family court specifically stated that the valuation and distribution of marital property would not affect the amount and/or duration of spousal support. The family court also noted that the wife suffered from carpel tunnel syndrome that had worsened during the marriage and that she also suffered from osteopenia (a lower bone density but not low enough to be considered

osteoporosis). Thus, the family court found that "[i]t is implausible that [the wife] could substantially increase her income-earning ability within a reasonable time by acquiring additional education or training." However, it found that the husband was sixty-three years of age and in good physical, mental, and emotional health.

The wife testified that during the marriage, she frequently worked in the marital, dental business to assist the husband. The husband testified that the wife would assist with some parts of the dental business but that he eventually hired help to do some of this work. The tax returns showed that between the time of the marriage in 1994 and the separation in 2007, the husband's yearly income increased substantially. Therefore, the family court found that the wife did contribute to the husband's income earning capacity, ability, and career. The wife submitted a monthly budget that indicated expenses of approximately $2,448.93 per month, which included the tax consequences and health care costs that she would have to expend. The husband did not submit a monthly budget, financial accountings, and/or records reflecting an inability to pay.

The husband was given the marital home in St. Albans that was purchased during the marriage. The parties agreed to sell a rental home in Huntington, with the proceeds to be split equally between them. The wife retained a home in St. Albans that she purchased prior to the marriage. The husband was to retain the commercial medical/dental building where his dental practice and other businesses were located. The wife hired Goldman Associates to value the commercial property, and the husband hired H. Kim Painter to value the same. Goldman valued the property at $540,000, while Painter valued it at $445,000. Both experts explained their method of valuation to the family court. The family court found that Goldman's report, analysis, and conclusion was superior and accurately reflected the fair market value of the property. The husband retained real estate located in South Carolina. The parties jointly retained Dan Selby to value the dental business, and Mr. Selby placed a fair market value on that asset. The family court ordered the husband to receive all marital equity interest in the business. The husband was to retain three vehicles, a utility trailer, a tow behind trailer, a flatbed, and related equipment while the wife retained one vehicle.

The wife was to retain her independent retirement account (IRA) and was to receive an amount equal to 50% of the total marital account balance accumulated under a separate IRA and under the dental 401(k) plan as of October 1, 2007, minus any balance prior to the marriage. The husband retained a number of other accounts, stocks, bankshares, life insurance policies, and certificates of deposit. He was also to retain his guns, tools, jewelry, and other items listed in his financial statement belatedly filed in September of 2010. There was a dispute as to whether an Ameriprise Financial account was the husband's property or marital property. The family court heard testimony on this issue and determined that the account was the husband's separate property. The parties were to split additional policies and accounts equally. Finally, both parties were to receive initial distributions of the marital estate. The family court went on to state that to equalize the distribution of the marital estate, the wife would receive an additional sum so that each party would leave the marriage with an equal and equitable marital distribution.

The wife also sought attorney's fees and costs. The family court stated that for more than three years, the husband had not been forthcoming with information, apparently stalling in the disclosure of mandatory financial information, and required the wife to jump through various

unnecessary hoops in order to obtain financial information required to be disclosed pursuant to West Virginia Code §§ 48-7-201 through 206. The family court determined the husband's conduct came within the clear purview of West Virginia Code §§ 48-1-305 and 48-5-611, which warranted the granting of fees and costs. The family court also noted the additional time repeatedly given to the husband to disclose financial information and his failure to comply. In awarding fees and costs, the family court also considered the substantial additional expense to the wife, her lesser ability to pay, and her financial condition. Therefore, the court awarded attorney's fees and costs to be paid by the husband to the wife. On appeal, the circuit court affirmed the order of the family court. It is from that order that petitioner appeals.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). West Virginia Code § 48-7-103 (2012) provides that "[i]n the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, . . ." Further, "[a] husband and wife are liable when any article purchased by either goes to: (1) The support of the family; (2) The joint benefit of both; . . . ." W.Va. Code § 48-29-303(b) (2012).

Petitioner asserts six assignments of error in his petition before this Court. Two of petitioner's assignments of error, assignments one and five, relate to the valuation of property. In his first assignment of error, petitioner argues that the family court erred in valuing his office building by adopting respondent's expert's report because respondent's expert used dissimilar buildings in dissimilar locations to prepare the valuation adopted by the family court. We have previously held that "[a] measure of discretion is accorded to a family law master [now family court judge] in making value determinations after hearing expert testimony." *Michael v. Michael*, 196 W.Va. 155, 159, 469 S.E.2d 14, 18 (1996). Petitioner's fifth assignment of error relates to the value of a "tow behind" trailer. He contends that the family court erred by valuing the trailer at $10,000, respondent's suggested value, rather than the lower value proposed by petitioner. Petitioner's financial disclosures were not timely filed before the family court. Pursuant to West Virginia Code § 48-7-206(1), when a party fails to timely file a complete disclosure statement, the court may accept the statement of the other party as accurate. When petitioner's financial disclosure was filed, it did not include any support for his proposed valuation of the trailer.

Petitioner's second assignment of error relates to the award of alimony to respondent. He claims that her monthly expenses were inflated subsequent to her filing for divorce and that she had a double recovery from the family court's award of attorney's fees and the inclusion of attorney's fees in respondent's debt obligations. West Virginia Code § 48-6-301(b) sets forth twenty items to be considered in determining the amount of an alimony award. In addition, a family court shall consider other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony. "'Questions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus,

3

*Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syl. Pt. 3, in part, *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 (2003). Based upon the record before this Court, we cannot find that the family court abused its discretion in awarding or computing alimony in this case.

The third assignment of error is petitioner's contention that the family court erred in distributing one-half of the value of certain bank accounts using values from dates earlier than the date of separation. There were a number of personal and business accounts at issue. Accountant Dan Selby performed a valuation of petitioner's dental practice using the business accounts. However, petitioner contends that the money in at least one of the accounts was counted toward that valuation and was also divided and distributed to respondent outside of the business valuation. Petitioner also takes issue with the dates of the financial statements used by the family court, arguing that the accounts on the date of separation control the analysis and distribution. One key issue in this assignment of error is the fact that a large sum of money was removed from one of the accounts shortly before the parties' separation. While petitioner contends that the money was transferred to a certificate of deposit that was divided and distributed to respondent, he fails to provide sufficient evidence to support that contention. West Virginia Code § 48-7-206(3) states as follows:

> Any assets with a fair market value of five hundred dollars or more which would be considered part of the estate of either or both of the parties if owned by either or both of them at the time of the action, but which was transferred for inadequate consideration, wasted, given away or otherwise unaccounted for by one of the parties, within five years prior to the filing of the petition or length of the marriage, whichever is shorter, shall be presumed to be part of the estate and shall be subject to the disclosure requirement contained in this part 2. With respect to such transfers the spouse shall have the same right and remedies as a creditor whose debt was contracted at the time the transfer was made under article one-a [§§ 40-1A et seq.], chapter forty of this code. Transfers which resulted in an exchange of assets of substantially equivalent value need not be specifically disclosed when such assets are otherwise identified in the statement of net worth.

The removal of the money from the account close in time to the parties' separation without documentation showing that the money was deposited into the account as claimed by petitioner, therefore, results in the missing money being distributed as part of the marital property. Further, "[t]he party seeking to exclude property from the marital estate that is presumptively marital property, has the burden of persuasion on that issue." Syl. Pt. 4, in part, *Mayhew v. Mayhew*, 205 W.Va. 490, 519 S.E.2d 188 (1999). Petitioner fails to satisfy that burden.

The fourth error alleged by petitioner is that the family court erred in failing to credit him with all of the health insurance premiums he paid on respondent's behalf between the date of separation and the date of the family court's order. He argues that prior to the marriage, respondent had health insurance through her employer, the same employer for whom she worked after the marriage. She was insured after she left her husband through the same dental association policy she had available before she was married, during the marriage, and after the marriage. The parties do not dispute that after they separated, petitioner continued to pay for respondent's health insurance premiums while the divorce proceedings were pending. While the parties

separated in October of 2009, the family court credited petitioner only with payments made after December 1, 2011. Respondent states that the family court did not give petitioner the additional credit because he did not request the same. Respondent also contends that petitioner failed to introduce any records or other financial data that would enable anyone to calculate the amount(s) petitioner allegedly paid for the health insurance. The date that the credit began is also the date that petitioner's alimony obligation began, December 1, 2011. Thus, the family court did not abuse its discretion in deciding not to grant petitioner credit for the health insurance premiums paid between the date of separation and December 1, 2011.

Petitioner's sixth and final assignment of error is his contention that the family court erred in treating as marital property guns given to petitioner by his father; tools, the vast majority of which petitioner claims were purchased by him prior to the marriage; and petitioner's mother's jewelry. As set forth above, petitioner bears the burden of overcoming the presumption that the items at issue are marital property. Syl. Pt. 4, *Mayhew* at 493, 519 S.E.2d at 191. The value of the items at issue were assigned by petitioner in his September 29, 2010, financial statement. During the hearing before the family court, petitioner testified that he had purchased some of the tools during the marriage. When he was asked whether he could recall any specific value, he estimated the value of the chainsaw to be between $300 and $350. He did not present any documentation to substantiate his claim that the other listed items were personal property acquired prior to the marriage. Therefore, the family court did not abuse its discretion by utilizing petitioner's valuation of these items in its distribution of these items.

Based on our review of the family court's order and the record before this Court, we cannot say that the family court abused its discretion in this matter. Further, we find that the family court's findings of fact were not clearly erroneous. The division of the parties' assets and liabilities was, therefore, not in error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 8, 2013

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

Justice Robin Jean Davis not participating
Chief Justice Brent D. Benjamin disqualified